COMMONWEALTH vs. DERRICK SMITH.

No. 98-P-2113.

Hampden. March 15, 2000. - August 11, 2000.

Present: KASS, GILLERMAN, & JACOBS, JJ.

*Practice, Criminal,* Instructions to jury, Witness. *Witness,* Unavailability. *Evidence,* Failure to produce witness.

At the trial of an indictment for armed robbery, the judge erred in refusing the defendant's request for a missing witness instruction while giving defense counsel permission to argue that inferences adverse to the Commonwealth could be drawn from its failure to call certain apparently available percipient witnesses; in circumstances in which the evidence warranted the instruction, the judge cautioned the jury not to decide the case based on unanswered questions, and the jury specifically inquired why the Commonwealth did not call other witnesses, the error was not harmless. [829-833]

INDICTMENTS found and returned in the Superior Court Department on October 8, 1997.

The cases were tried before *Judd J. Carhart,* J.

*Chauncey B. Wood* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. The issue before us is whether the judge erred in refusing to give a missing witness instruction after permitting defense counsel to argue that an adverse inference should be drawn against the Commonwealth for its failure to call certain persons to testify. In the circumstances of this case, we conclude that the refusal constituted error and vacate the defendant's convictions of armed robbery and threatening to commit a crime.[1]

---

[1]The defendant was sentenced to State prison for five to seven years for armed robbery and a concurrent house of correction term of six months for threatening to commit a crime.

*Background.* Percipient evidence of the crimes came solely from Brian Evans, the sixteen year old victim, who testified to being confronted by a stranger while he and a classmate were walking from school in Springfield. Shortly thereafter, while Evans was in a restaurant with the same classmate and the classmate's mother, the stranger ordered him to go to an adjacent convenience store. Once inside the store and within a few feet of a cashier, the stranger, knife in hand, robbed Evans of several gold chains and threatened to kill him if he called the police.

Five days later, Evans spied a person he thought to be the robber. Accompanied by six of his friends, he confronted the robber who stated that he had been joking and that he would retrieve the chains from his home and return them. At that point, Evans drove away with his friends and called the police who broadcast a description of the robber. Shortly thereafter, police officers picked up the defendant two or three blocks from the place of Evans's recent confrontation with the robber. The police then brought the defendant to Evans who identified him as the robber. The only other prosecution evidence came from three police officers who testified to picking up the defendant and to Evans identifying the defendant as the robber and giving a statement.

At trial, the defendant testified he was elsewhere at the time of the robbery. That alibi was corroborated by the testimony of two friends.

After the close of evidence, the judge rejected the defendant's request for a missing witness instruction.[2] Defense counsel made timely objection to the ruling. At the same time, the judge gave permission to defense counsel to argue that inferences adverse to the Commonwealth could be drawn from its failure

---

[2]That requested instruction essentially was in the form of instruction 4.04 of the Model Jury Instructions for Use in the District Court (rev. 1995), the first portion of which is as follows:

"If the Commonwealth in this case did not call a potential witness to testify, you are free to infer that the witness's testimony would not be favorable to the Commonwealth, but only if three conditions are satisfied:

"*First*: the absent witness must be expected to offer testimony which is important to the Commonwealth's case against the defendant;

"*Second*: the absent witness must be available to testify for the

to call certain witnesses. During argument, defendant's attorney pointed out that the Commonwealth had not called the classmate, the classmate's mother, the convenience store cashier, or the friends who were with Evans when he confronted the robber and implied that these witnesses were not called because they would not support Evans's testimony. After closing arguments and before the judge's instructions to the jury, defense counsel objected to the judge's proposed instructions[3] that the jurors were not to decide the case on the basis of "any unanswered questions" and in effect argued that the jury should be permitted to address the unanswered questions of why certain witnesses were not called to testify. The judge's charge included the following instruction: "[Y]ou must decide the case on the evidence presented to you which is the testimony of the witnesses who were called and the exhibits. You can't decide this case based on any conjecture, speculation, or any unanswered questions." The jury, during their deliberation, asked a series of questions including, "Why were there no witnesses except Brian Evans for the prosecution? Why was Brian's friend not subpoenaed? Can a juvenile be subpoenaed?" The judge responded that a juvenile may be subpoenaed and further told the jury that he was not going to answer the other questions and that, "It's up to you to decide this case based only on the evidence that you heard in this trial and upon no other basis."

*Discussion.* The rationale and rule for comment or instruction with respect to the failure to call a witness is that, "[w]here a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would

---

Commonwealth; and

   "*Third*: the witness's absence must not be explained by any of the other circumstances in the case."

[3]Following a practice we endorse, the judge submitted a draft of his proposed charge to counsel before arguments and, with their approval, provided the jury with a written copy of his final instructions after they were spoken by him. See *Commonwealth v. Dilone*, 385 Mass. 281, 287 n.2 (1982); *Commonwealth v. DiBenedetto*, 427 Mass. 414, 422 (1998).

have given testimony unfavorable to the party." *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986). The propriety of such comment or instruction is well-established. See *Commonwealth* v. *Zagranski*, 408 Mass. 278, 286-287 (1990); *Commonwealth* v. *Sena*, 29 Mass. App. Ct. 463, 467 (1990).

Here, counsel for the defendant followed the proper practice of obtaining the permission of the judge to argue to the jury that an inference might be drawn against the Commonwealth for failure to call certain witnesses. See *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. 655, 658 (1989).[4] The predicate for such permission is a ruling by the trial judge that, as matter of law, "there is a sufficient foundation for such inference in the record." *Ibid.* By permitting the missing witness argument, the judge implicitly concluded that the foundational requisites had been met. The record strongly supports that conclusion. The Commonwealth's case, entirely dependent on the credibility of Brian Evans, was not so strong as to render unimportant or insignificant potential witness testimony corroborating his identification of the defendant as the robber. See *Commonwealth* v. *Franklin*, 366 Mass. 284, 293 (1974); *Commonwealth* v. *Bryer*, 398 Mass. 9, 12 (1986). The evidence reveals several witnesses who could be expected to give such corroboration. Also, there is a basis in the evidence to conclude that most of the witnesses in question were available to the Commonwealth,[5] and there is no indication they were "hostilely disposed" to the

---

[4]While such a request is not a prerequisite to the argument, as a matter of law, counsel who fails to seek permission runs the risk that a judge will interrupt his argument and inform the jury of its impropriety. The judge, as a matter of discretion, may wait until the conclusion of the argument to give such correction. See *Commonwealth* v. *Vasquez*, *supra* at 658 n.4. See also *Commonwealth* v. *Fredette*, 396 Mass. 455, 466 (1985); *Commonwealth* v. *Rodriguez*, *ante* 370, 375 (2000).

[5]On cross-examination, defense counsel elicited from Evans that he knew where, in Springfield, several of the witnesses currently resided. Absent a showing by the Commonwealth of unfairness or impediments to obtaining the testimony of these witnesses, this evidence was enough to demonstrate availability.

The concept of availability has been the subject of different interpretations. One formulation focuses on the knowledge of the identity and whereabouts of the witness and the ability to require his testimony. Applying those criteria, this approach holds that, "Where a witness is equally available to both sides, no inference should be drawn against either side for failing to call the witness." Liacos, Massachusetts Evidence § 5.6.2, at 250 (7th ed. 1999). See *Commonwealth* v. *Happnie*, 3 Mass. App. Ct. 193, 195-198 (1975). The better view is that, "It is not accurate to say that where the person is 'equally avail-

prosecution. Moreover, no explanation was advanced, nor was one apparent, reasonably supporting the nonproduction of any witness. See *Commonwealth* v. *Anderson*, 411 Mass. 279, 282-283 (1991). Further, in the absence of any witness or evidence corroborating the victim's identification of the defendant, the anticipated testimony of at least the first of such "missing" witnesses may not reasonably be regarded as "merely corroborative" or "merely cumulative." *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 134.

The defendant suggests that where the evidence "uniformly supports a missing witness instruction . . . a criminal defendant is entitled to such an instruction as a matter of right," correctly pointing out that the cases supporting the need for judicial caution in permitting an adverse inference are inapposite when the inference is to run against the Commonwealth. The absence of constitutional concerns underlying the call for caution,[6] however, does not, of itself, remove the matter from the judge's discre-

able' to both parties no inference may be drawn from the failure of either to call him. 'What is in fact meant is that when so far as appears the witness would be as likely to be favorable to one party as the other there will be no inference.' " *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 134 n.8 (citation omitted). See *Commonwealth* v. *Anderson*, 411 Mass. 279, 282 (1991). This interpretation holds that the inference is permitted "even in cases where the witness appeared to be equally available to both parties, when it also appeared that the posture of the case was such that [one party] would be naturally expected to call the witness." *Commonwealth* v. *Niziolek*, 380 Mass. 513, 519 (1980). See *Commonwealth* v. *Thomas*, 429 Mass. 146, 151 (1999) ("[t]he fact that the Commonwealth itself could have called [the witness] does not render the adverse inference impermissible, because the defendant was more closely acquainted with [the witness] and would 'be naturally expected to call' [the witness] in light of the facts of the case. [*Commonwealth* v.] *Niziolek, supra* at 519").

[6]The cases urging caution in permitting an adverse inference often cite to *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 134-135, in which Justice Kaplan wrote that the matter should be approached with caution not only because of the potential serious adverse effect on the party who failed to call the witness but also because "[c]ircumspection in this matter is especially called for where the inference would run against a defendant in a criminal prosecution, for the inference may come uncomfortably close to invading constitutional rights." *Id.* at 135. Justice Kaplan noted that among the rights "[m]entioned in this connection" is "the Commonwealth's fixed burden to prove guilt beyond a reasonable doubt." *Id.* at 135 n.10. In contrast to the intimation that the adverse inference, when drawn against a criminal defendant, might erode the presumption of innocence and effect a shift in the burden of proof, the Supreme Judicial Court in *Commonwealth* v. *Thomas*, 429 Mass. 146, 153-154 (1999), indicated that an argument along these lines is without

tion. Whether an adverse inference appropriately may be drawn, depends not only on meeting the recognized foundational criteria, but also on the facts and posture of each case. *Commonwealth* v. *Thomas*, 429 Mass. 146, 151 (1999). *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 81 (1993). "In the last analysis, the trial judge has discretion to refuse to give the instruction and, conversely, a party who wishes the instruction cannot require it of right." *Commonwealth* v. *Anderson*, 411 Mass. at 283. To be sure, the degree of discretion may be lessened when it is the defendant rather than the Commonwealth who seeks approval of a missing witness argument and, as this court has noted, once such an argument is authorized and made, the judge may be required to give a missing witness instruction. *Commonwealth* v. *Sena*, 29 Mass. App. Ct. at 468 n.7.

We need not, however, go so far as to proclaim a per se rule. In the circumstances of this case, defense counsel's closing argument not only was undercut by the absence of a confirming judicial instruction permitting the adverse inference, but actually was negated by the instructions limiting the jurors to the admitted evidence and cautioning them against deciding the case on the basis of unanswered questions. Such normatively appropriate instructions reasonably may have been construed by the jury as requiring them to reject the adverse inference suggested by defense counsel, especially when considered with the absence of a missing witness instruction and the judge's bland response to the jury's pointed questions. Compare *Commonwealth* v. *Pratt*, 407 Mass. 647, 654-658 (1990) (in a case where there is no indication a missing witness instruction was requested, the court held that the judge's narrow admonition to the jury not to "imagine," "guess," and "speculate" did not improperly frustrate the defendant's missing witness argument).

Given the elemental victim versus defendant credibility issue with which the jury was presented, the judge's statements, coupled with his refusal to give a missing witness instruction, erroneously "removed from the jury's consideration the precise issue sought to be raised by the defendant[]." *Commonwealth* v.

---

merit and pointed to *Commonwealth* v. *Niziolek*, 380 Mass. at 522, as rejecting the claim that the adverse inference in any way shifted the burden of proof to the defendant and to *Commonwealth* v. *Happnie*, 3 Mass. App. Ct. 193, 195 (1975), holding that a defendant's failure to call certain witnesses "is fair matter for comment, and is not within the protection of the Constitution."

*Sena*, 29 Mass. App. Ct. at 468. The potential harm to the defendant was substantial. See *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 134 ("the inference, when it is made, can have a seriously adverse effect on the noncalling party — suggesting, as it does, that the party has wilfully attempted to withhold or conceal significant evidence"). See also *Commonwealth* v. *Franklin*, 366 Mass. at 294-295. Accordingly, we cannot say the error was harmless.[7]

In light of our decision, we do not address the defendant's claim that the prosecutor's unobjected to closing argument contained improper statements that cumulatively require reversal. We trust that, upon any retrial, the prosecutor will avoid misstating the evidence, vouching for testimony, and pointing out that the defendant failed to present documentary evidence to corroborate the alibi testimony.

The judgments are reversed, and the convictions are vacated; the case is to stand for a new trial.

*So ordered.*

---

[7]The defendant registered appropriate objection throughout, implicating the "harmless error" standard. *Commonwealth* v. *Alphas*, 430 Mass. 8, 23 (1999) (Greaney, J. concurring).