COMMONWEALTH *vs.* JOSEPH REMEDOR
(and a companion case[1]).

No. 99-P-850.

Middlesex. December 12, 2000. - October 3, 2001.

Present: ARMSTRONG, C.J., KAPLAN, & GREENBERG, JJ.

*Controlled Substances. Practice, Criminal,* Instructions to jury, Conduct of prosecutor. *Identification. Evidence,* Nonexistence of evidence. *Entrapment.*

At the trial of an indictment charging trafficking in cocaine in which the principal theory of defense was misidentification, there was a substantial risk of a miscarriage of justice created by the judge's response to a question from the jury, refusing to answer whether videotape recordings by the police, if made, would have been admissible as evidence of the drug transaction in question, and instructing the jury to confine their consideration to the evidence that was presented, in effect, precluding the jury's consideration of the defense set forth in *Commonwealth* v. *Bowden,* 379 Mass. 472 (1980), where the failure of the police to record the transaction was a permissible ground of defense under the *Bowden* decision, and where the error was sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error. [699-701]

At the trial of an indictment charging trafficking in cocaine, the judge did not err in declining to instruct the jury in the law of entrapment or responding to a jury question in such a way as to eliminate any possibility that the jury might consider the defense, where there was no evidence that the defendant, initially not ready or willing to break the law, was ensnared by the Commonwealth into overcoming his reluctance or resistance and doing so. [701-704]

At a criminal trial, there was no substantial risk of a miscarriage of justice created by the judge's response to a jury question about entrapment that allegedly had the effect of advising them that there was no inducement in the case, where there had been insufficient evidence presented to place the entrapment defense before the jury. [704-706]

At a criminal trial, the judge did not err in failing to grant a mistrial on grounds of claimed prejudicial testimony elicited by the prosecutor, where the jury was presumed to follow the judge's curative instructions and direction that the testimony be struck. [706]

INDICTMENTS found and returned in the Superior Court Department on December 19, 1997.

---

[1]Commonwealth *vs.* Patrick Paul.

The cases were tried before *Judith A. Cowin*, J.

*David L. Larsen* for Joseph Remedor.

*Richard J. Fallon* for Patrick Paul.

*Elizabeth Klein Frumkin*, Assistant Attorney General, for the Commonwealth.

GREENBERG, J. On their appeal from convictions of trafficking in cocaine, the defendants assert that mistakes made by the trial judge during the instructional phase of the case require a new trial. The defendant, Joseph Remedor, contends that there was enough evidence of inducement to raise an entrapment defense and that the judge should have so instructed the jury. The defendant, Patrick Paul, claims that the judge gave a misleading answer to a question posed by the jury that wrongfully undercut his *Bowden* defense (*Commonwealth* v. *Bowden*, 379 Mass. 472 [1980]).

1. *The case.* For the basic facts, we turn largely to the testimony at trial of State Trooper Marion Fletcher, working undercover, and Thomas Miller, a paid informant Fletcher had used in previous investigations. Much of the story was also told by other police officers who provided continual surveillance of 10 Murdock Street in Somerville.

Police investigation in September, 1997, evidently pointed to the defendant Remedor as a middleman of cocaine distribution. Miller told Fletcher that Remedor was selling large quantities of cocaine. Miller's brother had introduced him to Remedor as a potential buyer. He claimed to have made a purchase of cocaine the first time they met. That deal was consummated in a house on Murdock Street and consisted of about four ounces of crack cocaine (112 grams), an amount Miller considered to be a large quantity.

According to the evidence presented at trial, in November, 1997, there were two controlled sales to Miller and Fletcher, posing as buyers: on November 4 at about 7:45 P.M., they drove to 10 Murdock Street and saw the defendant Remedor standing in the driveway. Miller conversed with him, flashed $3,000 in cash, and returned the money to Fletcher who sat inside the car. One-half hour later, a taxicab returned to the location and the operator, later identified by Fletcher at trial as the defendant

Paul, got out and handed a brown plastic bag containing 70.6 grams of cocaine to Fletcher in exchange for the cash. During this transaction, there were other State police undercover officers surveilling the same area. The other meeting occurred on November 26 at about 12:15 p.m., and was prearranged by Fletcher who spoke with the defendant Remedor over the telephone. They agreed to a pick-up at the Murdock Street location. Fletcher drove there, and when she arrived, the defendant Remedor got inside her car and showed her a package of cocaine. While Fletcher pretended to count out $3,000 in cash, other officers closed in. Remedor saw them and fled the area on foot. He was quickly apprehended by the pursuing police. The defendant Paul was not involved in this event and the record does not disclose the time or circumstances of his subsequent arrest. These two transactions formed the basis for the indictments upon which the defendants were convicted.

2. *The judge's response to the jury's question concerning Paul's* Bowden *defense.* Paul's principal theory of defense was misidentification. It was undisputed at trial that the police expected to make their November 4 purchase from Remedor, who from the September episode, they regarded as a major drug dealer. For the November 4 meeting, they outfitted Fletcher and Miller with body wires supposedly to pick up conversations, and as mentioned, employed other undercover officers to conduct close surveillance.

Fletcher was called as a witness by the Commonwealth and testified that Paul was involved in the delivery of the cocaine on November 4 as the operator of the taxi. Another witness, State police Officer John McCabe, testified that he followed the taxi, allegedly driven by Paul, from 10 Murdock Street to 84 Highland Street in Somerville. Although he lost sight of the operator before arriving there, he did identify Paul as coming out of a rear entrance at the Highland Street location and driving the taxi back to Murdock Street where Fletcher had remained. He acknowledged on cross-examination that he made no record of the taxi's license number. When he returned to Murdock Street, he did not park near no. 10, nor did he observe what was happening there. In her testimony, Fletcher explained that at that time she and the informant Miller were wearing

body wires beneath their clothes. She stated that the device allows a receiver on the other end to pick up the transmissions. During redirect examination, Fletcher explained that, for safety reasons, she and Miller were wearing "wires" on all of the occasions they were with the defendants. During this part of Fletcher's testimony, the prosecutor elicited an unanticipated response which is reprinted in the margin.[2] On cross-examination of both officers, trial counsel explored the absence of any recordings.

Paul's trial counsel argued that a recording would have been lawful because Fletcher's testimony showed that, as early as September, 1997, Remedor had been targeted as a large-scale dealer. That contention was correct. See *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. 629, 634 (1997), and cases cited. (While *Zuluaga* involved larger transactions, the quantities here were substantial; moreover, it is reasonable to suspect that any retail street sales of cocaine, even if small in quantity, have a nexus to organized crime.)

At the end of that day, after the jury had been excused, the prosecutor sought an order barring trial counsel from arguing "that the Commonwealth could have taped these conversations" or, in the alternative, an instruction that the electronic surveillance could only happen under limited circumstances with a warrant. The following morning, the judge continued the

---

[2]  Q.   [The prosecutor]: "Now, were the transmissions on any of these occasions recorded?"

A.   "No, they were not."

Q.   "Why not?"
[Counsel for Paul]: "Objection."
[Counsel for Remedor]: "Objection."
[The court]: "Overruled."

A.   "Because in order to tape conversation, you need to get an authorized *Blood* warrant, in essence a search warrant, to seize the conversation."

Q.   "So is this something different from that?"

A.   "Yes, this is for officer safety only."

colloquy with counsel and rejected both arguments. After first expressing some reservations whether a warrant might be required in these circumstances, the judge ultimately ruled that there was "no expectation of privacy here" and that she would "permit defense counsel to argue that the conversations could have been recorded either with or without a warrant."[3] Both counsel focused their closing arguments on the reliability of Fletcher's testimony identifying Paul as a participant in the November 4 transaction. Paul's trial counsel argued that Fletcher's identification of the defendant Paul, based on her having seen him for one minute thirteen months earlier, coupled with the failure of the surveilling police to make a videotape or audiotape of the transaction, or even to photograph the taxicab driver or record the license number or medallion number of the taxicab, left a reasonable doubt whether Paul was, in fact, the taxicab driver.

The judge did not include an instruction on the *Bowden* defense in her charge to the jury.

During the first afternoon of deliberations, however, the jurors posed the following question to the judge: "If audio or video tapes had been made (without a warrant) would they have been admissible as evidence[?]" The judge then discussed the point with both counsel. Counsel for Paul suggested that the judge answer either that such recordings would have been admissible, or that they would have been admissible had they been lawfully recorded. Counsel also requested that the judge include in her response that there was no evidence that videotapes or audiotapes were made. Last, counsel wanted the judge to inform the jury that, if the recordings did exist, but were suppressed at trial, she would not have permitted defense counsel to make a

---

[3]The judge's ruling was correct. The statute governing intercepts, G. L. c. 272, § 99, permits police to intercept conversations without compliance with the statute's warrant procedures, if they are engaged in investigating possession or sale of narcotics reasonably thought to have a nexus to organized crime, and if an officer is himself a party to the conversation or has been given permission by one who is a party thereof. § 99 B 4. The *Blood* (*Commonwealth* v. *Blood*, 400 Mass. 61 [1987]) overlay of a requirement to obtain a search warrant seems to have been limited by later cases to intercepts of conversations occurring entirely within a private home. See *Commonwealth* v. *Price*, 408 Mass. 668, 674 (1990); *Commonwealth* v. *Eason*, 427 Mass. 595, 600 (1998).

*Bowden* argument. The judge decided not to respond directly to the question. She admonished the jurors to confine themselves to the evidence at trial and not to guess about evidence not presented. Paul's counsel renewed her objection after the judge completed the further instruction.[4]

3. *Analysis.* The defendant Paul contends that the trial judge, in responding to the jury's question with a strict admonition to confine themselves to the evidence they had seen and heard, effectively destroyed his *Bowden* defense. The Commonwealth argues that the general objection counsel for Paul lodged after the judge gave her instruction was inadequate to preserve this claim for appellate review. It is evident that defense counsel's objection was directed at the judge's failure to answer the jury question as she had requested, rather than at the deleterious effect of the instruction the judge actually gave. "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979). Counsel's objection failed to alert the judge to the problem the defendant now perceives with the instruction she gave. In the circumstances, we conduct only a limited review of the defendant's claim of error, to determine if the alleged error was so serious as to create a substantial risk of a miscarriage of justice. *Commonwealth* v. *Almon*, 30 Mass. App. Ct. 721, 724-725 (1991).

---

[4]The further instruction was:

"This question does not need to be answered, this is a hypothetical abstract question. Please decide this case on the evidence presented to you with my instructions. You are not to decide this case based upon any guesswork. You are to decide the case based upon the evidence. Do not guess about witnesses not called, or what they would have said if they had been called. Do not guess about evidence not presented. Confine yourselves to the evidence you have heard and seen. The jury is to confine their deliberations to the evidence and nothing but the evidence.

"And the jury may now resume their deliberations, remembering that you are to consider all of my instructions together as a whole, those I gave you before, and those I have just given you."

The judge's response to the jury's question, refusing to answer the question concerning admissibility and instructing the jury to confine their consideration to the evidence that *was* presented, in context could only have been understood by the jury as a ruling that the police officers' failure to record the transaction or to photograph the taxicab driver or to record his license and taxi numbers, were not an appropriate ground upon which to build a defense and were not to be considered by them. Compare *Commonwealth* v. *Gilmore*, 399 Mass. 741, 745-746 (1987). In effect, the judge instructed the jury not to consider the defendant Paul's *Bowden* defense.

A substantial risk of a miscarriage of justice occurred for two reasons. First, Paul's *Bowden* defense was a permissible line of argument, because the police, as the judge originally ruled, lawfully could have recorded the audio transmissions without a search warrant. Moreover, the police could have videotaped the transaction or at least photographed the participants from one of the surveilling cruisers, and they could have recorded the license plate number and the taxi number of the taxicab, from either of which the identity of the driver might have been verified. Their failure to make use of any of these tools was a permissible ground of defense under the *Bowden* decision. Second, by originally ruling, correctly, that Paul's counsel could argue the *Bowden* omissions in Paul's defense, the judge induced Paul's counsel to rely heavily on the investigative failures as a basis for the jury to conclude that there was reasonable doubt about Paul's involvement in the November 4 transaction. Compare *Commonwealth* v. *Smith*, 49 Mass. App. Ct. 827, 830 (2000) ("The predicate for such permission is a ruling by the trial judge that, as matter of law, 'there is a sufficient foundation for such inference in the record.' By permitting the missing witness argument, the judge implicitly concluded that the foundational requisites had been met" [citation omitted]). For the judge then to answer the jury's reasonable inquiry whether audiotapes and videotapes, if available, would have been admissible in evidence, by instructing the jury not to consider evidence not before them and to confine their attention to the evidence that *had* been admitted, must have had the effect of steering the jury away from the investigative omissions, and putting the

defendant Paul, who had been led to rely on those omissions, at an unfair disadvantage. *Id.* at 831.[5] That the instruction would have misled the jury appears from the question they posed. The jury were obviously focusing on the investigative omissions in their deliberations. When they were admonished not to consider the deficiencies in the Commonwealth's case, the effect was to eliminate a strong reasonable doubt raised by the defendant's identification defense. Thus, the error was "sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error." *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). The evidence against the defendant was not "overwhelmingly one-sided," *Commonwealth* v. *Amirault*, 424 Mass. 618, 651 (1997), consisting, as it did, of the eyewitness testimony of persons to whom the defendant was a stranger and who were testifying thirteen months after the incident that resulted in the defendant's arrest. Finally, the defendant derived no tactical benefit from failing to challenge the giving of an instruction that unfairly undermined his defense, so counsel's failure to object cannot be attributed to any kind of reasonable tactical decision. See *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. at 21.

We conclude that, in the circumstances, the trial judge's instruction in response to the jury's question created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Almon*, 30 Mass. App. Ct. at 725.

4. *The defendant Remedor's appeal.* Counsel for Remedor sought to establish, through cross-examination of the Commonwealth's witnesses and the testimony of the informant,

---

[5]In the *Smith* case, where the defendant was permitted, properly, by the judge to make a missing witness argument, we reversed the conviction not because the judge declined to give a missing witness instruction, but because he in effect negated the missing witness argument by these instructions: "[Y]ou must decide the case on the evidence presented to you which is the testimony of the witnesses who were called and the exhibits. You can't decide the case based on any conjecture, speculation, or any unanswered questions." Then, in response to the jury's inquiry why no witnesses were called to substantiate the victim's story, and whether they might have been subpoenaed, the judge declined to answer the question and instructed the jury: "It's up to you to decide this case based only on the evidence that you heard in this trial and upon no other basis." *Smith, supra* at 829.

Thomas Miller, that Miller and Trooper Fletcher set up the drug buys to establish grounds to arrest and prosecute the defendant for trafficking. Based on this testimony, the defendant asked the judge to instruct the jury on the defense of entrapment. The judge did not give the requested instruction. Shortly after the jury began deliberations, a question concerning the entrapment defense was submitted to the judge. Remedor first complains that the judge erred in failing to instruct the jury in the law of entrapment. He also argues that the judge's response to the jury's question eliminated any possibility that the jury might consider the defense. He subjoins that argument with the claim that the judge's response was defective and confusing.

(a) *Question of entrapment.* As we have noted, although the defendant offered no testimony at trial, defense counsel did question Fletcher and Miller extensively. What he was able to show was that Miller was a well-paid informant, working under the direction of the police. As a former drug dealer and addict, Miller began cooperating with Federal agents in the mid-1980's. He used various aliases and was paid over $50,000 by Federal agents for his work. His arrangement with the State police involved a standard $1,500 for each kilogram of cocaine seized by them as a result of his efforts. As might be expected, he wrote no reports and reported only orally to his handlers.

On the occasion of their first meeting, Miller followed Remedor to the house on Murdock Street and bought some cocaine from him. Once there, Remedor produced a bag of cocaine which Miller estimated contained about four ounces (112 grams). Remedor allowed Miller to select the rock he wished to purchase.

There followed, on October 9, November 4, and November 26, 1997, the transactions that formed the basis for the indictments. We have previously described the details of the first two transactions in part 1. The November 26 deal was aborted by the police when they arrested the defendant. Between November 4 and November 26, there were several other meetings between Miller, Fletcher, and the defendant that resulted in failed transactions. On two occasions, Miller flashed $100,000 in cash, but Remedor could not deliver the goods.

The threshold level for a defendant to raise the entrapment defense is low, but the defendant must show more than mere solicitation. See *Commonwealth* v. *Tracey*, 416 Mass. 528, 535-536 (1993). See also *Commonwealth* v. *Shuman*, 391 Mass. 345, 350-351 (1984). In essence, entrapment is a defense that may be asserted when a defendant is intentionally induced by the government or its agents into committing the offense. See *Commonwealth* v. *Thompson*, 382 Mass. 379, 385 (1981). Consequently, an entrapment instruction is required when there is evidence of a government agent's intentional, persistent, and repeated conduct which goes beyond mere solicitation or request that the defendant participate in a criminal act. *Commonwealth* v. *Miller*, 361 Mass. 644, 652 (1972), citing *Kadis* v. *United States*, 373 F.2d 370, 374 (1st Cir. 1967); *Commonwealth* v. *Hardy*, 31 Mass. App. Ct. 909, 910 (1992); 33 A.L.R. 2d 883 (1954), for collected cases. When evidence of inducement has been introduced by the defendant, the burden shifts to the government to prove beyond a reasonable doubt the predisposition of the defendant to commit the crime. *Commonwealth* v. *Shuman*, 391 Mass. at 351.

The question in this case, admittedly, is close. That the jury raised the issue on its own indicates that Miller's importunities concerned them. Remedor argues that he "did not appear as a drug dealer" and there was evidence that he was legitimately employed and did not subsist on earnings from the drug trade. Undue enticement, however, "is not established by showing how little it would take to cause a particular defendant to commit a crime." *Commonwealth* v. *Thompson*, 382 Mass. at 385. Otherwise stated, to establish entrapment, the focus is on the nature and extent of the government's embranglement. *United States* v. *Steinberg*, 525 F.2d 1126, 1135 (2d Cir. 1975), cert. denied, 425 U.S. 971 (1976). That Remedor had other means of support does not, in itself, rebut the notion that he was engaged in a profitable sideline. The real question is whether there was evidence that the defendant, "initially not ready or willing to break the law, [was] enticed or ensnared by the Commonwealth into overcoming his reluctance or resistance and doing so?" *Commonwealth* v. *LaBonte*, 25 Mass. App. Ct. 190, 194 (1987). We conclude that there was none. Miller offered the defendant

an opportunity to sell cocaine and Remedor accepted the offer the first time they met. The record does not evince the kind of "aggressive persuasion, coercive encouragement, lengthy negotiations, pleading or arguing" detailed in *Commonwealth* v. *Tracey*, 416 Mass. at 536. The defendant was "deep enough" into the trade to put together two deals within a month and predisposed to make arrangements for two others that fell apart for reasons unconnected to police activity. *Commonwealth* v. *LaBonte*, 25 Mass. App. Ct. at 194-195. His possession of several ounces of cocaine and his willingness to sell it on short notice stands in sharp contrast to cases where a reluctant seller was induced by police pressure over a prolonged period of time. See *Commonwealth* v. *Harvard*, 356 Mass. 452, 460 (1969); *Commonwealth* v. *Tracey*, 416 Mass. at 532-535; *Commonwealth* v. *Hardy*, 31 Mass. App. Ct. at 910.

In his brief, Remedor overlooks much of the evidence presented by the Commonwealth that he was predisposed to commit the offenses charged. His willingness to sell cocaine — without any prodding from the government — was shown by Miller's testimony. That Remedor could not deliver the quantities or types of cocaine or handguns promised does not negate predisposition. Rather, it illustrates his willingness to expand the enterprise. There was evidence of other extrinsic signs of readiness as well. Remedor sold increasing amounts of cocaine on three separate occasions over a six-week period. He sold a total of nearly 180 grams of cocaine, including both crack and powder varieties. He also initiated the involvement of a courier in one of the transactions. And there was evidence that he contacted an unnamed individual on November 17 to procure a larger amount of cocaine on the same day. In sum, it does not appear that there was enough in the present case to raise the entrapment issue.

(b) *The judge's supplemental instruction.* In responding to the jury's question about entrapment, Remedor argues that the judge's remarks had the effect of advising them that there was

no evidence of inducement in the case.[6] Before responding to the question, the judge advised counsel of the response she proposed to give, and both defense counsel and the prosecution objected. The critical portion of her response is reprinted in the margin.[7]

In advancing this argument, the defendant claims that he was foreclosed from presenting a substantial ground of defense and that the judge invaded the jury's fact-finding function. See *Commonwealth* v. *Gilmore*, 399 Mass. 741, 744-746 (1987). In so doing, he appears to have overlooked the points we have set forth in section 4(a) of this opinion. An issue of entrapment may not go to the jury unless there is some evidence of government inducement. See *Commonwealth* v. *Thompson*, 382 Mass. at 384. A judge is not required to charge as to "factual situations which are speculative or conjectural and which are unsupported by evidence." *Commonwealth* v. *Cook*, 419 Mass. 192, 202 (1994). In essence, the judge gave the defendant an instruction that was more favorable than warranted by the evidence.

More troublesome, however, is that part of her principal instruction that advised the jury that they were precluded from considering "something that is not raised by the evidence at all," but must limit themselves to "the evidence that you have heard and seen." There was no objection to this particular portion of the instruction, at least not with sufficient specificity so as to bring the error "to the attention of the judge . . . in order to give [her] an opportunity to rectify the error," if any. *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979). In the

---

[6]The question submitted by the jury was, "Does the law allow us to consider a legal defense which has not been presented, specifically: entrapment or encouragement to commit a crime?"

[7]"The answer to your question is yes, the law does allow you to consider a legal defense which has not been presented. But the law requires you to decide the case based on the evidence you have heard and seen. The law does not preclude you from considering a defense or a weakness in the Government's case merely because the defendant has not raised it or argued it. But you are precluded from considering something *that is not raised by the evidence at all*. The jury can consider anything for which there is evidence that detracts from the Government's case or presents a defense. You are not precluded simply because the defendant has not argued it, but you may decide the case, as I've told you before, only based on evidence that you have heard and seen." (Emphasis added.)

absence of such an objection, the claim of error will be considered only under a substantial risk of miscarriage standard. *Commonwealth* v. *Bowler*, 407 Mass. 304, 305-308 (1990). There was no prejudicial error. As there was insufficient evidence presented to place the entrapment defense before the jury, no harm was done.

(c) *Prosecutorial misconduct.* Remedor's final point is that the judge erred by failing to grant a mistrial on grounds of claimed prejudicial testimony elicited by the prosecutor. During cross-examination of Miller, the prosecutor asked him about a possible "Miami connection" in this case. Defense counsel objected and requested a mistrial. The judge gave a curative instruction and directed the jury to disregard the question. A separate question about convictions obtained against persons in another case in which Miller acted as an informant was the subject of a separate mistrial motion. Again, the judge ordered the testimony struck. In her final instructions, she reiterated the warning that the jury was to disregard struck testimony. A jury is presumed to follow the judge's instructions. See *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997), and cases cited.

The judgment against Patrick Paul is reversed and remanded for a new trial. The judgments against Joseph Remedor are affirmed.

*So ordered.*