COMMONWEALTH vs. MARIO ROMAN.

No. 08-P-322.

Bristol. January 13, 2009. - May 13, 2009.

Present: GREEN, BROWN, & VUONO, JJ.

*Controlled Substances. Practice, Criminal,* Indictment. *Evidence,* Joint venturer. *Joint Enterprise.*

There was no merit to the criminal defendant's claim that he was tried for a crime not included in the indictment charging him with trafficking in a controlled substance (cocaine) with a net weight of fourteen grams or more. [252-254]

At the trial of an indictment charging the defendant with trafficking in cocaine as a joint venturer, it was reasonable to infer from the manner in which the defendant drove the vehicle involved in the incident that the defendant participated in the venture and sought to make it succeed. [254-255]

INDICTMENTS found and returned in the Superior Court Department on March 16, 2005.

The cases were tried before *E. Susan Garsh,* J.

*Nadell Hill* for the defendant.

*Rachel J. Eisenhaure,* Assistant District Attorney, for the Commonwealth.

BROWN, J. After a jury trial in the Superior Court, the defendant was convicted as a joint venturer of trafficking in cocaine with a net weight of more than fourteen grams (and less than twenty-eight grams), possession of marijuana with the intent to distribute, and two counts (one for each illegal narcotic) of doing so in a school zone. On appeal, the defendant argues that (1) he was convicted of an offense for which he was not indicted; and (2) the evidence was insufficient to sustain his convictions. We affirm.

1. *Background.* The evidence presented to the jury included the following. Fall River police officers observed a red Ford

Explorer sport utility vehicle (SUV) enter the parking lot of a pizzeria and back into a parking space. Two individuals (later identified as Paul Ledoux and Kelly Devarie) immediately approached the passenger side of the vehicle and handed the front-seat passenger what appeared to be folded up currency. The front-seat passenger pointed to the rear of the vehicle, and the rear passenger handed Devarie an object, which she put in her left coat pocket. Ledoux and Devarie then got in the back seat of the vehicle, and it drove away. When it stopped on another street in front of a house, police cruisers, which had followed it, blocked the vehicle, and the police officers got out and approached the vehicle. An officer who approached the rear passenger side and opened the door saw Devarie throw a small white object on the floor. Another officer retrieved the object, which was later determined to be .53 grams of cocaine. Another officer observed the front-seat passenger bend down as if he were putting something under (or removing something from under) the front seat. The officer seized a bag containing marijuana from under the front passenger seat. Another officer found 13.66 grams of "crack" cocaine in the center console, which was midway between the driver and the front-seat passenger. A jacket was found in the rear passenger area; it was found to contain a total of 27.89 grams of crack cocaine and a substantial amount of cash. The jacket belonged to one Romero, the back-seat passenger.

2. *Adequacy of the indictment.* The defendant claims that he was tried for a crime not included in the indictment, namely, trafficking in the cocaine found in a jacket belonging to Romero, an alleged joint venturer.

We begin with the indictment, which reads as follows.

> "That [the defendant,] on or about January 4, 2005, . . . did traffick in a controlled substance, to wit: Cocaine, Class B, or any salt thereof, by knowingly or intentionally manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute or dispense, or bring into this Commonwealth, a net weight of fourteen grams or more of Cocaine, or any salt thereof, or a net weight of fourteen grams or more of any mixture containing Cocaine or salt thereof, in violation of Chapter 94C, Section 32E(b)(1) of the General Laws of Massachusetts. (G. L. Chap. 94C, Sec. 32E(b)(1) [*sic*]."

The section of the statute cited at the conclusion of the indict-ment sets forth the punishment when the net weight of the cocaine is "[f]ourteen grams or more but less than twenty-eight grams." G. L. c. 94C, § 32E(*b*)(1), as appearing in St. 1992, c. 396, § 3.

According to the defendant, the reference to § 32E(*b*)(1) reflects the grand jury's conclusion that they only found prob-able cause to indict the defendant for less than twenty-eight grams of cocaine. The defendant reasons that the grand jury must have rejected any connection between him and the cocaine found in Romero's jacket (27.89 grams) and limited the indictment to the cocaine found in the center console of the vehicle he was driving (13.66 grams), plus the cocaine found in the packet discarded by Devarie (.53 grams). The defendant attempts to bolster this theory by relying on statements made by the prosecu-tor to the same effect during a hearing on his motion to dismiss. However, the prosecutor was merely suggesting his interpretation of what the grand jury had done. We do not view a prosecutor's interpretation of the intent of the grand jury as binding.

Contrary to the defendant's claim, there is no basis in the record for concluding that the grand jury intended the indict-ment to exclude any of the crack cocaine found during this incident. The grand jury minutes show that all three defendants were indicted together. The contraband was aggregated and introduced along with the relevant certificates of analysis at the single proceeding. See *Commonwealth* v. *Ortiz*, 431 Mass. 134, 137-140 (2000). There was no attempt by the prosecutor to bifurcate a particular cache of narcotics and identify it with a particular defendant. The prosecutor's theory was obviously one of joint venture in which each defendant was equally culpable of trafficking in all the cocaine seized.

Moreover, the record shows that with regard to trafficking in cocaine by the defendant here, Roman, the grand jury had but one indictment to consider and that document only set forth the requirement that the prosecution establish that more than fourteen grams of cocaine were involved in the incident. There is no basis in this record from which we can conclude or even infer that the grand jury would have known that G. L. c. 94C, § 32E(*b*)(1), included an upward limit of twenty-eight grams.

Therefore, once the prosecutor introduced evidence that showed more than forty-two grams of cocaine were seized during this stop of the vehicle, the grand jury would have been warranted in concluding that the crime of trafficking in more than fourteen grams of cocaine had been established.

In these circumstances, we are confident that the defendant was not tried for a crime for which he was not indicted. In any event, there is no error, as the special verdict slip shows that the trial jury found the defendant guilty with respect to the separate quantities of cocaine — the jury found him guilty on a joint venture theory of trafficking in the cocaine found in the "console plus single baggie" (together totaling 14.19 grams) and also found him guilty on a joint venture theory of trafficking in cocaine based on the cocaine found in the "jacket." Nor do we discern any prejudice in the introduction of the cocaine found in Romero's jacket, because that evidence would have been admissible to establish the joint venture. See *Commonwealth* v. *Luna*, 410 Mass. 131, 140 (1991) (evidence of uncharged sales of cocaine admissible to show participation in joint venture).

3. *Sufficiency of the evidence.* The issue is whether at the "climactic moments" the defendant was more than just merely present, but "consciously acted together [with the other coventurers] in carrying out the criminal endeavor, each thereby becoming responsible for the acts of the others." *Commonwealth* v. *Fidler*, 23 Mass. App. Ct. 506, 513 (1987). There was more here than mere presence. There was sufficient evidence that the defendant "somehow participated in committing the offense." *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 410 (1986), quoting from *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 242 (1982). It is reasonable to infer from the manner in which the defendant drove the SUV — he quickly pulled into the pizza restaurant parking lot and backed the vehicle into a parking spot that limited visibility of the vehicle at precisely the time two drug users were in the process of purchasing narcotics from his passengers — that the defendant participated in the venture and that he "sought to make it succeed." *Commonwealth* v. *Amaral, supra.* See *Commonwealth* v. *Foley*, 7 Mass. App. Ct. 608, 609-610, 614-615 (1979) (defendant waited outside gift shop in automobile he was driving while principals committed

robbery inside; principals fled to waiting automobile, which drove off; jury could have concluded beyond reasonable doubt that defendant was part of joint venture to rob gift shop); *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 790-791, 801 (1985) (defendant driver parked near crime scene, made quick getaway with robber as passenger, then fled police by vehicle and on foot; sufficient evidence of joint venture); *Commonwealth* v. *Tracy*, 27 Mass. App. Ct. 455, 457-458 (1989) (defendant, who had spent time with principal before robbery, was driver of getaway car and engaged in high-speed police chase); *Commonwealth* v. *Caramanica*, 49 Mass. App. Ct. 376, 376-377, 382 (2000) (woman got out of vehicle driven by defendant, entered convenience store, and removed money at knifepoint; defendant approached store and banged impatiently on glass door; woman immediately left store and got back into vehicle, and defendant sped off; court stated, "[T]here is no question that, as the getaway driver, he was an active participant in the criminal enterprise"). Compare *Commonwealth* v. *Ahart*, 37 Mass. App. Ct. 565, 571-572 (1994) (defendant seen driving vehicle used in getaway from robbery forty-five minutes after robbery; evidence insufficient to sustain conviction on joint enterprise theory).

*Judgments affirmed.*