NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-964

COMMONWEALTH

vs.

WANSTADER PREVILON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Wanstader Previlon, was convicted on June 12, 2018, after a two-day jury trial in District Court, of distribution of a class B substance, G. L. c. 94C, § 32A (a), and of distribution of a controlled substance near a public park, G. L. c. 94C, § 32J.[1,2]  On appeal, he focuses his arguments solely on count one and asserts that (1) there was insufficient evidence to convict him of distribution of a class B substance, (2) a new trial should have been ordered because

_____

[1] The defendant's conviction for a controlled substance violation near a public park was later vacated after the Supreme Judicial Court's ruling in Commonwealth v. Boger, 486 Mass 358, 363 (2020) (Commonwealth failed to prove distribution near public park because it did not present evidence park was owned or maintained by government).

[2] The defendant was also charged with conspiracy to violate a drug law, G. L. c. 94C, § 40.  That charge was later dismissed at the request of the Commonwealth.

the judge failed to properly instruct the jury regarding aiding and abetting, and (3) the judge abused his discretion by limiting testimony that could have developed his theory of sentencing entrapment and by failing to provide an entrapment jury instruction.  Discerning no error, we affirm.

Background.  With respect to our analysis of the defendant's argument pertaining to the sufficiency of the evidence, we summarize the evidence in the light most favorable to the Commonwealth, reserving some facts for discussion of the specific issues.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

In the summer of 2016, Manchester-by-the-Sea Detective Christopher Locke placed an advertisement in the "casual encounters" section of Craigslist.[3]  The advertisement used slang[4] to suggest that Detective Locke, acting in his undercover capacity, was interested in obtaining cocaine.  The advertisement also referenced a location in Manchester-by-the-Sea called Cathedral of the Pines, which is "a large recreation area" containing "several thousand acres of hiking trails," as a

---

[3] Craigslist is a classified advertisements website.  See Boger, 486 Mass. at 359 n.2.

[4] The advertisement read in part, "[l]ooking to SKI with Mr. Right Now . . . If you have party favors, you go the front of the line!"  Detective Locke testified that "ski" referred to cocaine and that "[p]arty favors is slang for drugs."

meeting spot.  Cathedral of the Pines was chosen because the police had received "hundreds upon hundreds upon hundreds of calls of suspicious activity in the area."

On July 12, Detective Locke received a response, also via Craigslist, inquiring as to whether he was "looking for ski," and after responding in the affirmative, received a phone number to contact.  He began exchanging text messages with that phone number and negotiated the purchase of 10.5 grams[5] of cocaine for $750, plus an additional $40 to pay a driver to bring the seller to the detective's location in Manchester-by-the-Sea.

Having arranged the sale, Detective Locke organized other detectives to assist him with conducting the undercover purchase of cocaine.  Detective Locke, along with a detective from Beverly, positioned themselves in an unmarked vehicle in the parking lot where he had agreed to meet the suspect with whom he had communicated via text.  Two other unmarked police cars were positioned nearby, and two marked police cars were positioned down the street, "tucked in behind [a] farm stand."

After a period of waiting, a vehicle matching the description provided by the party with whom Detective Locke was

---

[5] Detective Locke initially testified that he had arranged to purchase 10.5 grams of cocaine but then corrected the figure to 10 grams after being prompted to do so by the Commonwealth.  The text messages in evidence clearly show that the negotiated quantity was 10.5 grams.

communicating, a blue Honda, pulled into the parking lot and stopped directly in front of Detective Locke's undercover vehicle. Codefendant Hetson Leneus was driving the Honda, while codefendant Indiah Boger was riding in one of the rear passenger seats. The defendant was seated in the front passenger seat. Detective Locke approached the vehicle, and, as he did, Leneus rolled down the defendant's window. Leneus told Detective Locke to get in the car, but he declined, saying, "my buddy will freak out if I get in the car." The defendant asked him if there were "any cops in the area," and after responding, "[n]o, we're all good," Detective Locke handed the defendant $790 in marked bills.[6] After doing so, the driver directed his attention to Boger, sitting in the back seat. Boger proceeded to hand Detective Locke a "small glassine bag," through the right rear passenger window, which the detective believed, based on training and experience, contained cocaine.

After accepting the bag from Boger, Detective Locke gave a discrete signal to the other detectives. They pulled over the vehicle in which the defendant was riding approximately 200 yards down the road as it drove away. All three occupants were placed under arrest. Upon looking in the vehicle, Boger's cell

---

[6] Detective Locke testified that "[w]e photocopy the specific bills that we're using for the buy money" and that "[w]e make sure to include the serial number of each bill."

4

phone, which had been used to coordinate the sale with Detective Locke, was observed and recovered from the front-passenger seat, where the defendant had been sitting.[7]  The defendant, as well as Leneus and Boger, were subsequently charged with distribution of a class B substance, G. L. c. 94C, § 32A (a), distribution of a controlled substance near a public park, G. L. c. 94C, § 32J, and conspiracy to violate a drug law, G. L. c. 94C, § 40.

At trial, the Commonwealth called two witnesses, Detective Locke and State police crime laboratory forensic scientist Nevin Vigneault.  Detective Locke testified to the way in which he created the Craigslist advertisement, communicated with the defendants, and coordinated the undercover purchase and subsequent arrest.  During his testimony, counsel for Boger attempted to question Detective Locke as to his motivation for choosing an alleged public park as the purchase location, asking, "you're aware that any sales that occur in this area would increase any penalty under the law, isn't that correct?"  The Commonwealth objected and the judge sustained the Commonwealth's objection, observing that "sentencing entrapment is not a recognized defense."

---

[7] Detective Locke testified that, when he initially observed the cell phone, "[o]n the screen of the phone was [sic] the text messages that I had been exchanging with that phone."

5

The defendant moved for a required finding of not guilty at the close of the Commonwealth's case-in-chief and again at the close of all evidence. Both motions were denied. During a discussion regarding jury instructions, the defendant sought a specific, self-crafted instruction related to aiding and abetting; there was also an extended discussion regarding a park zone instruction. The judge denied the request as to aiding and abetting and instead issued an aiding and abetting instruction pursuant to the model jury instructions. See Criminal Model Jury Instructions for Use in the District Court 4.200 (2011). The judge also declined to use language requested by the defendant when providing a park zone instruction. The defendant's objections were noted.

The jury returned guilty verdicts on distribution of a class B substance and controlled substance violation near a public park for the defendant and Boger; it returned not-guilty verdicts on the same charges for Leneus. The charge for conspiracy was dismissed at the request of the Commonwealth after the verdicts were delivered. The defendant was sentenced to two years and one day in the House of Corrections and this appeal followed.

Discussion. 1. Sufficiency of the evidence. The defendant first argues that there was insufficient evidence to prove that he actually or constructively distributed or

6

delivered the cocaine to Detective Locke.  He relatedly argues that the jury was required to engage in speculation to conclude that he did.  We disagree.

"In determining the validity of a claim challenging the sufficiency of the Commonwealth's evidence at trial, we review the evidence in the light most favorable to the Commonwealth to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Powell, 459 Mass. 572, 578-579 (2011), quoting Latimore, 378 Mass. at 677.  "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"  Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713 (2014).  The question is whether the evidence would permit a jury to find the defendant guilty, not whether it requires it.  See Commonwealth v. Guy, 441 Mass. 96, 101 (2004), quoting Commonwealth v. Fisher, 433 Mass. 340, 342-343 (2001).

To prove that the defendant distributed a class B substance, the Commonwealth must show that he acted "knowingly or intentionally" in distributing the class B substance.[8]  G. L. c. 94C, § 32A (a).  "Distribute" is defined as "to deliver other

_____

[8] The Commonwealth called a forensic scientist to testify that the white powder recovered from the vehicle in which the defendant was riding was a class B substance, and that testimony is not challenged here.

7

than by administering or dispensing a controlled substance," and "deliver" is defined as "to transfer, whether by actual or constructive transfer, a controlled substance from one person to another, whether or not there is an agency relationship." G. L. c. 94C, § 1.

The Commonwealth proceeded upon the theory that the defendant engaged in distribution by aiding and abetting. To prove that the defendant aided and abetted in the distribution of a class B substance, the Commonwealth must "prove 'beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, with the intent required to commit the crime.'" Commonwealth v. Johnson, 92 Mass. App. Ct. 538, 543 (2017), quoting Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009).

Here, the Commonwealth provided ample evidence to allow a rational trier of fact to conclude that the defendant knowingly participated in the distribution of a class B substance. Detective Locke testified that he coordinated the purchase of 10.5 grams of cocaine via text message from a person who said they would arrive at the site of the sale in "[a] blue Honda," driven by the driver for whom additional compensation was required. The defendant subsequently arrived at the aforementioned location in a vehicle matching that description. When Detective Locke approached the vehicle, the defendant, who

8

was seated in the front passenger seat, "asked [him] if there was [sic] any cops in the area." After responding, "[n]o, we're all good," Detective Locke handed the defendant the prearranged sum of $790, which the defendant accepted. Thereafter, Boger, through the right rear passenger window, handed him a glassine bag containing cocaine.

These facts are consistent with a multi-person narcotics sale and were sufficient to permit a rational trier of fact to conclude that the defendant knowingly participated in the commission of the distribution of the class B substance. See Commonwealth v. Mgaresh, 83 Mass. App. Ct. 276, 278 (2013) (sufficient evidence of joint venture where, inter alia, defendant arranged narcotics sale and possessed cell phone used to negotiate sale). See also Commonwealth v. Roman, 74 Mass. App. Ct. 251, 254-255 (2009) (sufficient facts to support joint venture where defendant attempted to conceal transfer of narcotics by another). Additionally, the defendant's question regarding the presence of police in the area was sufficient to allow a reasonable trier of fact to conclude that he was aware illegal activity was afoot. See Commonwealth v. Miranda, 441 Mass. 783, 791-792 (2004) (defendant convicted of distribution after, inter alia, serving as lookout during narcotics sale). See also Commonwealth v. Ward, 45 Mass. App. Ct. 901, 902 (1998). Further still, the way in which Boger handed the

9

cocaine to Detective Locke after the defendant accepted the money was also sufficient for a reasonable trier of fact to conclude that Boger and the defendant were coordinating in their conduct of the sale; one accepted payment while the other delivered the narcotics. See Commonwealth v. Fernandes, 46 Mass. App. Ct. 455, 461-462 (1999). See also Commonwealth v. Robinson, 43 Mass. App. Ct. 257, 259-260 (1997) (describing multi-person drug-distribution procedure). Furthermore, the fact that the cell phone used to negotiate the sale was recovered, unlocked, and in the seat where the defendant was sitting reasonably supports the conclusion that he was the one who communicated with Detective Locke when arranging the sale. Taken together, this testimony was sufficient to permit the jury to conclude that the defendant knowingly participated in the distribution of the cocaine.[9] The judge did not err in denying the defendant's motion for a required finding. See Latimore,

---

[9] The defendant further argues that there was insufficient evidence to show that he engaged in constructive distribution of the narcotics. We need not address the contention. Constructive distribution and distribution by aiding and abetting are two different legal theories. See Commonwealth v. Robinson, 43 Mass. App. Ct. 257, 261 (1997) ("The theories of constructive possession and joint venture are[] alternative theories with which to connect an accused to the crime"). See also Zanetti, 454 Mass. at 467 (adopting language of aiding and abetting in lieu of joint venture). Assuming without deciding that the Commonwealth failed to prove constructive distribution, such a failure would not impact its case with respect to aiding and abetting distribution.

10

378 Mass. at 677-678, citing Jackson v. Virginia, 443 U.S. 307, 318-319 (1979) ("[T]o sustain the denial of a directed verdict, . . . [the appellate court] must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt").

2. Jury instructions. The defendant further asserts that the judge's jury instruction with respect to aiding and abetting was in error because it failed to comply with the standard set forth in Zanetti, 454 Mass. at 467-468, and because it ran the risk of confusing the jury. We are not persuaded.

"Where, as here, a defendant raises a timely objection to a judge's instruction to the jury, we review the claim for prejudicial error." Commonwealth v. Kelly, 470 Mass. 682, 687 (2015). "Appellate courts conduct a two-part test: whether the instructions were legally erroneous, and (if so) whether that error was prejudicial" (quotations omitted). Id. at 688. "Trial judges have 'considerable discretion in framing jury instructions, both in determining the precise phraseology used and the appropriate degree of elaboration.'" Id. at 688, quoting Commonwealth v. Newell, 55 Mass. App. Ct. 119, 131 (2002).

"When there is evidence that more than one person may have participated in the commission of the crime, judges are to instruct the jury that the defendant is guilty if the

11

Commonwealth has proved beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense." Zanetti, 454 Mass. at 467-468.

Here, it is undisputed the codefendants were all in the car together at the time the alleged distribution occurred and that they were arrested together shortly thereafter. The Commonwealth proceeded on the theory of aiding and abetting, and it is undisputed that the judge provided the District Court model jury instruction for that offense to the jury. As is required under Zanetti, this instruction properly informed the jury of the two elements of aiding and abetting. The judge told the jury, in part, "[f]irst, . . . the Commonwealth must prove that each Defendant knowingly and intentionally participated in some meaningful way in the commission of the alleged offense, either alone or with others. Second, that he or she did so with the intent required for the offense." This model instruction made clear to the jury that the elements of aiding and abetting did not constitute a separate crime from distribution of a class B substance, but rather, were a prerequisite to proof of that crime by way of the theory of aiding and abetting. There was no error.

3. Entrapment. Finally, the defendant argues that the judge erred by limiting his codefendant's line of questioning

12

with respect to the theory of entrapment and because, he contends, the judge should have issued an entrapment jury instruction.[10]  Accordingly, we recite additional facts that the defendant argues support an entrapment defense.  See Commonwealth v. Encarnacion, 38 Mass. App. Ct. 972, 973 (1995), quoting Commonwealth v. Tracey, 416 Mass. 528, 536 (1993).  The party[11] with whom Detective Locke negotiated the narcotics exchange identified themselves as "coming from Dorchester." Detective Locke asked if they could meet him in Manchester-by-the-Sea.  After clarifying that Manchester-by-the-Sea was in Massachusetts, the unknown party agreed to do so in exchange for an additional forty dollars to pay a driver to transport him to that location.  The unknown party clarified in which town the meeting was to occur one additional time before arrival.  In spite of these arguments, we conclude that the judge did not err

---

[10] We note at the outset that the defendant appears to conflate the concepts of entrapment and sentencing entrapment, which are two separate legal theories.  See Commonwealth v. Garcia, 421 Mass. 686, 687 (1996).  This distinction is discussed infra.

[11] Although the defendant argues that he was not the party with whom Detective Locke communicated, the jury was free to discredit that assertion and reasonably infer that he was based on the discovery of the cell phone used to negotiate the sale, open to the text message exchange, in the seat where the defendant had been sitting.  Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), citing Commonwealth v. Woods, 466 Mass. 707, 713 (2014).

in cutting off this portion of the testimony or in failing to issue an instruction on entrapment.

"Whether evidence is relevant and whether its probative value is substantially outweighed by its prejudicial effect are matters entrusted to the trial judge's broad discretion and are not disturbed absent palpable error." Commonwealth v. Podgurski, 81 Mass. App. Ct. 175, 183 (2012), quoting Commonwealth v. Sylvia, 456 Mass. 182, 192 (2010).

"An entrapment instruction is required when there is evidence of a government agent's intentional, persistent, and repeated conduct that goes beyond mere solicitation or request that the defendant participate in a criminal act." Commonwealth v. Lawrence, 69 Mass. App. Ct. 596, 601 (2007), citing Commonwealth v. Remedor, 52 Mass. App. Ct. 694, 703 (2001). "The threshold for a defendant to raise the entrapment issue is low, but the defendant must show more than mere solicitation." Encarnacion, 38 Mass. App. Ct. at 973, quoting Tracey, 416 Mass. at 536. Sentencing entrapment, in contrast, is an argument in which the defendant asserts that law enforcement has structured its investigation "in order to obtain convictions of more serious trafficking charges and the imposition of higher mandatory minimum sentences." Commonwealth v. Garcia, 421 Mass. 686, 687 (1996) (arguing law enforcement entrapped defendant to sell larger quantity of cocaine). See Commonwealth v. Labitue,

14

49 Mass. App. Ct. 913, 914-915 (2000) (arguing police waited to conduct search until defendant was near school). Sentencing entrapment is not a recognized defense in the Commonwealth. See Labitue, 49 Mass. App. Ct. at 915.

Here, the attorney for Boger attempted to question Detective Locke as to the increased penalty under the law for distribution of narcotics in the vicinity of an alleged park. The Commonwealth objected, and, at sidebar, the judge correctly observed that "sentencing entrapment is not a recognized defense." See Commonwealth v. Cruz, 430 Mass. 838, 846-847 (2000). The judge was correct, therefore, to disallow additional questions as to sentencing enhancements related to the location of the sale. The judge did permit the attorney for Boger to question Detective Locke regarding why he selected the particular location and invited the attorney to return to sidebar if he wished to pursue this line of questioning further. The attorney for Boger could have exercised this opportunity to develop additional testimony regarding a permissible entrapment defense. However, he did not.[12] No testimony pertaining to entrapment was obtained thereafter. Without more, we cannot

---

[12] After Detective Locke answered that he selected the location due to the large number of complaints of criminal activity related to it, the attorney for Boger pursued a different line of questioning without ever returning to sidebar.

15

conclude that the judge's failure to provide an entrapment instruction was an abuse of discretion or error of law.[13]  See Commonwealth v. Saletino, 449 Mass. 657, 658 n.1 (2007) (describing difference between traditional entrapment and sentencing entrapment).

Judgment affirmed.

By the Court (Wolohojian,
 Blake & Desmond, JJ.[14]),

*Joseph F. Stanton*

Clerk

Entered:   February 22, 2023.

---

[13] Even assuming without deciding that the defendant was entitled to an entrapment defense or instruction with respect to the charge of distribution near a public park, "[t]he dismissal of the charges 'render[s] moot any defects in the underlying proceedings.'"  Commonwealth v. Estrada, 69 Mass. App. Ct. 514, 517 (2007), quoting Burns v. Commonwealth, 430 Mass. 444, 447 (1999).

[14] The panelists are listed in order of seniority.