COMMONWEALTH *vs.* CHRISTOPHER W. TRACEY.

Plymouth. October 6, 1993. - December 13, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Controlled Substances. Entrapment. Constitutional Law*, Self-incrimina-
tion. *Practice, Criminal*, Instructions to jury.

At the trial of an indictment for trafficking in cocaine in which the defend-
ant denied committing the crime, i.e., denied having acted with the req-
uisite intent, the defendant was entitled to have the judge instruct the
jury on the defense of entrapment which, in the circumstances, was not
an inconsistent defense. [532-535]

At the trial of an indictment for trafficking in cocaine, the defendant pro-
duced sufficient evidence of entrapment for submission of the question
to the jury. [535-537]

The judge at a criminal trial properly declined to compel the testimony of
a witness who claimed his privilege against self-incrimination where it
was not perfectly clear that the witness's testimony could not possibly
have incriminated him. [538]


INDICTMENT found and returned in the Superior Court De-
partment on May 13, 1991.

The case was tried before *John A. Tierney*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Randolph Gioia* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the
Commonwealth.

LIACOS, C.J. The defendant, Christopher W. Tracey, was
indicted by a Plymouth County grand jury for trafficking in
cocaine with a net weight of one hundred or more grams but
less than two hundred grams, in violation of G. L. c. 94C,
§ 32E (*b*) (1992 ed.). After a jury trial, the defendant was
convicted and sentenced to from fifteen to twenty years at
the Massachusetts Correctional Institution, Cedar Junction.

The defendant appealed from his conviction to the Appeals Court, arguing that the trial judge (1) erred in refusing to instruct the jury on the defense of entrapment; (2) abused his discretion by denying a continuance so that the defendant could obtain the presence of a character witness, and (3) erred in refusing to compel the testimony of a witness who had asserted his privilege against self-incrimination. We transferred the appeal to this court on our own motion. Because we order reversal on the first alleged error, we need not discuss the second, but briefly comment on the third claim of error because the issue may recur on a new trial.

For purposes of this appeal, we need recite only the testimony of the defendant, which he claims raised the defense of entrapment. In February, 1991, the defendant lived in Brockton with his girl friend (then pregnant), their child, and his girl friend's older daughter. He was employed part time as a roofer. On February 19, 1991, the defendant's girl friend told the defendant that one Ronald Grover had telephoned several times that day seeking to speak to the defendant.[1] When Grover called again, the defendant spoke to him. Grover told the defendant that he had just received $5,000 and wanted to purchase a large amount of cocaine. Grover wanted the defendant to put Grover in contact with a Paul McCratic, an alleged dealer, and offered the defendant $500 to do so. The defendant asked Grover why he did not contact McCratic directly and Grover responded that he knew the defendant was friendly with McCratic whereas Grover was not.[2] The defendant agreed to meet Grover at the Brockton Café, near the defendant's home.

The defendant testified that he went to the Brockton Café because he had planned to get a pizza at the café, and that

---

[1] The defendant testified that he had been acquainted with, but not a good friend of, Grover. There was also testimony that the defendant knew Grover to be a frequent user of narcotics.

[2] The defendant testified that he had known McCratic for about five years. McCratic had been a repairman at an apartment house owned by the defendant's brother and also had done work on an automobile owned by the defendant.

he did not want to continue the telephone conversation in front of his girl friend because "[s]he would freak out" and he "was panicking" and he did not want Grover to come to his home.

The defendant met Grover at the café and Grover again asked the defendant to introduce him to McCratic. The defendant resisted, then Grover acted "like crazy" and told the defendant that all the defendant had to do to make $500 was to introduce Grover to McCratic. At this point, undercover State police trooper Thomas arrived. Thomas shook hands with Grover and attempted to shake hands with the defendant, who refused. Thomas sat down with Grover and the defendant and asked Grover if this was "Chris," referring to the defendant. Grover introduced Thomas as his friend who was putting up some of the money for the cocaine. In the ensuing conversation, the defendant again told Grover and now Thomas to go to McCratic themselves. Thomas acted like a "tough guy" and said to the defendant, "I want to deal with you," and also suggested that he wanted to set up a drug distribution network in the area in which the defendant could get involved and make money. Thomas showed the defendant "some money." The defendant gave "negative, cockie answers" to Thomas because Thomas "was coming on to [him] stronger." Thomas and Grover discussed the price and quantity of cocaine while the defendant ate pizza. Thomas got angry because no meeting with McCratic was arranged, so he left. The defendant then yelled at Grover for seeking to involve him in such matters. After paying for the pizza, he went home.

The following day, February 20, when the defendant arrived home from work, his girl friend informed him that Grover again had called repeatedly throughout the day. She was upset by these calls. Grover called after the defendant arrived home and spoke to the defendant. Grover apologized for the events which occured the previous night and again offered the defendant $500 for an introduction to McCratic. The defendant refused, but Grover was insistent. The defendant again told Grover to call McCratic himself.

After the last conversation with Grover, the defendant called McCratic to tell him that Grover and Thomas wanted to purchase cocaine and to warn McCratic not to get involved with the pair. McCratic indicated a willingness to sell the cocaine but also told the defendant that he (McCratic) would make it clear to Grover that the defendant wanted no involvement in the transaction.

On February 21, the defendant and McCratic drove to Grover's home on West Ashland Street in Brockton. Upon arrival, the defendant and McCratic saw Thomas and Grover in an automobile in the driveway of Grover's home. McCratic spoke briefly to Grover and Thomas and then drove the defendant home. About an hour after returning home, the defendant received a telephone call from Grover. Grover told the defendant that Thomas was angry at the defendant because Thomas had given money to McCratic but McCratic had not delivered any drugs. Grover said that Thomas had plans to go to the defendant's house, so the defendant agreed to meet Thomas and Grover at the café instead.[3]

The defendant ran to the café and stood in front of the building for several minutes before he realized that Thomas was in his truck which was parked in the middle of the café's parking lot. The defendant told Thomas that he did not intend to stay there until Grover arrived and did not intend to go to McCratic's house with Thomas and Grover. Thomas and the defendant argued briefly and swore at each other, and Thomas demanded the return of his money. The defendant then ran off to McCratic's house, intending to tell McCratic to return Thomas' money.

At McCratic's house, the defendant met McCratic and one Hernandez. The defendant told McCratic to return Thomas' money and to cancel the deal. McCratic told the defendant that he had not received the cocaine and that he intended to meet with Thomas to return the money. In fact,

[3]The defendant testified that he agreed to go to the café because he panicked when Grover told him that Thomas was going to his house and he was concerned for his pregnant girl friend and the children.

McCratic had the cocaine, which Hernandez had delivered. The defendant, McCratic, and Hernandez drove to the café and met Thomas. Earlier that evening, Thomas had "butt[ed]" Grover out of the investigation because he was no longer necessary. The defendant spoke briefly to Thomas to tell him that McCratic had the money and then began to walk away. McCratic delivered the cocaine to Thomas, and the defendant, McCratic, and Hernandez were quickly arrested by undercover police officers on a prearranged signal by Thomas.[4]

1. *Entrapment.* The defendant argues on appeal that the trial judge erred in refusing to give the jury an instruction on entrapment as the defendant requested.[5] The judge may have

---

[4]McCratic was deceased by the time of the trial; Grover claimed his privilege against self-incrimination. Thus, the trial revolved essentially around the testimony of Trooper Thomas and the defendant. We note also that, as of the time of the defendant's trial, Grover had not been charged with any crime, and Hernandez was "in default."

[5]Defense counsel suggested the following instructions:

"24. Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case. *Commonwealth* v. *Thompson*, [382 Mass. 379, 386 n.8 (1981)].

"25. What the state cannot tolerate is having its officers, who are charged with the duty of enforcing the law, instigate crime by implanting criminal ideas in innocent minds and thereby bringing about offenses that otherwise would never have been perpetrated. *Commonwealth* v. *Harvard*, 356 Mass. 452, 459 (1969).

"26. Mere evidence of solicitation by officers or their agents is not enough to show inducement. However, inducement is shown by acts which go beyond a mere request; including, for example, repeated or persistent solicitations, pleading or arguing with the defendant, appealing to the defendant's sympathy or other emotion, or resort to aggressive persuasion or coercive encouragement of the defendant. *Commonwealth* v. *Thompson*, *supra* [at 385].

"27. If, after considering the evidence, you are left with a reasonable doubt whether Christopher Tracey had the intent or purpose to commit the offense charged before receiving the officer's or agent's inducement, or whether he committed the offense only because he was induced or persuaded by the officer or agent, then you must find Christopher Tracey not guilty upon this indictment. *United States* v. *Russell*, 411 U.S. 423, 427 n. 4 (1973)."

based his refusal to give the instruction on two grounds: first, that the defendant could not claim entrapment and also deny that he committed the crime,[6] and second, that there was no evidence which would support an entrapment defense.[7] Because we are unsure whether only one of these grounds was the basis for the judge's refusal, we discuss both.

a. *Inconsistent defense.* When defendant's counsel requested an instruction on entrapment, the judge refused to give such instruction because the defendant denied committing the crime. See note 6, *supra.* The judge may have been guided by the line of cases from other jurisdictions which have held that a defendant may not deny committing the acts constituting the crime and also assert the defense of entrapment. See, e.g., *Young* v. *State,* 308 Ark. 647, 651-652 (1992); *State* v. *Hawkins,* 173 Conn. 431, 436 (1977). Under this view, the entrapment defense may be raised only where the defendant admits doing the deed but disclaims that he formed his own intent. *McCarroll* v. *State,* 294 Ala. 87, 87 (1975). Other jurisdictions, however, have allowed defendants to claim entrapment and also to deny committing the crime. See, e.g., *Mathews* v. *United States,* 485 U.S. 58, 65 (1988); *People* v. *Perez,* 62 Cal. 2d 769, 775 (1965). See

---

[6]The following dialogue occured outside the hearing of the jury:

THE PROSECUTOR: "I would suggest that an entrapment instruction would be improper."

THE JUDGE: "What do you say? You talked about entrapment in your opening. Your client took the stand and said he didn't do it, didn't know anything about the drugs. And entrapment is when a person's will is bent to do something that he would not otherwise do. Your client says he didn't do it. How can you argue entrapment, entrapped into not doing something?"

[7]THE PROSECUTOR: "Well, in the first place, again, he says, I didn't do it. Therefore it can't be entrapment. And there isn't a single shred of evidence in this case that Ronald Grover is an agent of Tony Thomas as understood in the case law. There isn't a single shred of evidence other than Grover had no idea that Mr. Thomas was a policeman. So under the circumstances, there isn't a single even vaguely credible basis to put an entrapment defense in here. There isn't a word in this trial that would justify that instruction. Not one."

THE JUDGE: "I don't see any. I'm not going to give the instruction. I note your objection."

also *People* v. *D'Angelo*, 401 Mich. 167, 178 (1977).[8] Still other jurisdictions have permitted the availability of the entrapment defense in situations where the defendant denies the intent element of the crime but admits to the requisite acts. See, e.g., *State* v. *Sanders*, 95 N.C. App. 56, 61 (1989), citing *State* v. *Luster*, 306 N.C. 566, 581 n.4 (1982).

This court has not yet explicitly stated whether a defendant may deny committing the crime charged and also assert the defense of entrapment. We have permitted defendants in criminal actions to raise "inconsistent" defenses in other situations. See *Commonwealth* v. *Fickett*, 403 Mass. 194, 201 (1988) (defendant could assert that he never entered joint venture and, alternatively, that he withdrew); *Lannon* v. *Commonwealth*, 379 Mass. 786 (1980) (murder and voluntary manslaughter); *Commonwealth* v. *Barton*, 367 Mass. 515, 518 (1975) (accident and self-defense). In civil actions, parties freely may assert inconsistent claims and defenses. Mass. R. Civ. P. 8 (e)(2), 365 Mass. 749 (1974).

This court has recognized entrapment as a valid defense. "Entrapment, so-called, is a relatively simple and very desirable concept which was unfortunately misnamed with some resulting confusion. It is socially desirable for criminals to be apprehended and brought to justice and there is nothing whatever wrong or out of place in setting traps to catch those bent on crime; what the state cannot tolerate is having its officers, who are charged with the duty of enforcing the law, instigate crime by implanting criminal ideas in innocent minds and thereby bringing about offenses that otherwise would never have been perpetrated." *Commonwealth* v. *Harvard*, 356 Mass. 452, 459 (1969), quoting R. Perkins, Criminal Law 921 (2d ed. 1969). See *Commonwealth* v.

---

[8]The *D'Angelo* court concluded that the entrapment defense calls for an objective test of governmental misconduct and thus is a matter for the judge, not the jury. *People* v. *D'Angelo*, 401 Mich. 167, 177-178 (1977). This issue is not argued before us, and we do not reach it. But see *Commonwealth* v. *Shuman*, 391 Mass. 345, 352 (1984) ("We have never recognized entrapment as a ground for a motion to dismiss"; the issue of entrapment may be raised at trial only).

*Miller*, 361 Mass. 644, 651 (1972). Thus, the main purpose of allowing this defense is deterrence of the undesirable manufacturing of crime by law enforcement officials. This purpose could not be served effectively if we require defendants to incriminate themselves by admitting all elements of a crime in order for them to raise the entrapment defense. See *People* v. *Perez, supra.* A defendant is unlikely, in essence, to confess the crime when there is a risk that he will not be able to meet the burden of showing inducement, and also a risk that the jury will find the assertion of inducement noncredible in light of the defendant's admission of the crime. See *People* v. *D'Angelo, supra* at 659. Moreover, the ultimate effect of requiring the defendant to admit to the crime in order to raise the defense of entrapment would be to relieve the Commonwealth of its burden of proving all elements of the crime beyond a reasonable doubt. See *Perez, supra.* We conclude that, if the judge based his refusal to give an entrapment instruction on the ground that the defendant may not claim entrapment while also denying committing the crime, it was error.[9]

b. *Evidence of entrapment.* In denying the defendant's request for an entrapment instruction, the judge stated that the defendant had not produced any evidence of entrapment. See note 7, *supra.* While we cannot say that the defendant produced evidence to establish entrapment as matter of law, our review of the record leads us to conclude that the defendant at least produced enough evidence of entrapment so that the question should have been submitted to the jury.

---

[9]In this case, the defendant maintained that he acted, not with an intent to traffic in cocaine, but with the intent to protect his girl friend and the children and to disassociate himself from the drug transaction. We previously have noted that the issue presented when entrapment is raised is whether the government brought about the defendant's disposition to commit the crime. *Commonwealth* v. *Shuman*, 391 Mass. 345, 350-351 (1984). Since the origin of the defendant's intent is the main inquiry, assertion of the entrapment defense while denying guilt cannot be characterized as inconsistent where, as here, the defendant's denial of guilt is founded upon lack of the requisite intent.

The threshold for a defendant to raise the entrapment is-
sue is low, but the defendant must show more than mere so-
licitation. *Commonwealth* v. *Shuman*, 391 Mass. 345, 350-
351 (1984). *Arthurs* v. *Board of Registration in Medicine*,
383 Mass. 299, 317 (1981). *Commonwealth* v. *Thompson*,
382 Mass. 379, 384-385 (1981). In other cases where we
have discussed entrapment, we have described the types of
conduct which have gone beyond a mere request and pos-
sessed indicia of inducement: aggressive persuasion, coercive
encouragement, lengthy negotiations, pleading or arguing
with the defendant, repeated or persistent solicitation, per-
suasion, importuning, and playing on sympathy or other emo-
tion. *Commonwealth* v. *Shuman*, *supra* at 351-352. *Arthurs*
v. *Board of Registration in Medicine*, *supra* at 317. *Com-
monwealth* v. *Thompson*, *supra* at 384-385. See *Common-
wealth* v. *Hardy*, 31 Mass. Ap. Ct. 909 (1991); *Common-
wealth* v. *Colon*, 33 Mass. App. Ct. 304, 305 (1992). In
determining whether the defendant has met his initial bur-
den, the trial judge should not consider the credibility of the
evidence. *Commonwealth* v. *Hardy*, *supra*. The inquiry is
whether there is *any* evidence sufficient to raise the defense,
even if the evidence is unsubstantial and even if the evidence
comes solely from the defendant's testimony. See *United
States* v. *Garcia*, 546 F.2d 613, 615 (5th Cir.), cert. denied,
430 U.S. 958 (1977).

The defendant testified that Grover called him repeatedly
over several days and persistently requested that he set up a
meeting with McCratic. He further testified that at the first
meeting with Thomas and Grover, Thomas acted abrasively
and told the defendant that he (Thomas) wanted the defend-
ant involved and suggested that the defendant could make
money. The defendant made it clear he wanted no involve-
ment, and Thomas left that first meeting angry that the de-
fendant would not set up a meeting with McCratic. When
the defendant met Thomas at the café on the day he was
arrested, he told Thomas that he did not intend to be in-
volved in the deal and did not intend to wait around until
Grover arrived. Thomas then demanded from the defendant

the money he had given to McCratic. The defendant testified that he stayed involved only because he wanted to ensure that McCratic returned the money. Throughout his testimony, the defendant maintained that he acted out of fear, frustration, and concern for his girl friend and the children. From this testimony, if believed, a jury could have found entrapment by the acts of the undercover officer, Trooper Thomas.[10] The judge erred in denying the requested instruction. Thus, there must be a new trial.

---

[10]The defendant called his girl friend to testify. When she was asked about the telephone conversations between the defendant and Grover, the prosecutor objected. The judge excluded her testimony. Defense counsel offered that she would testify that the defendant yelled at Grover and said he wanted nothing to do with the transaction and that this was relevant to the defendant's state of mind on the issue of entrapment. As we noted above, the issue in an entrapment inquiry is the origin of the defendant's intent. Note 9, *supra*. Thus, the girl friend's testimony should have been allowed.

The Commonwealth argues that the actions of Grover cannot be the basis for the entrapment defense because he was not an agent of the government. In response, the defendant urges us to adopt the unsuspecting middleman theory adopted by some courts and suggested by commentators. See Note, Entrapment and Unwitting Intermediaries: Opposition to the Direct Inducement Requirement, 62 B.U.L. Rev. 929 (1982). See also *United States* v. *Klosterman*, 248 F.2d 191 (3d Cir. 1957) (unsuspecting middleman may be viewed as agent of the government for entrapment purposes); *Davis* v. *State*, 570 So. 2d 791, 794 (Ala. Crim. App. 1990) (same). We need not squarely decide that issue in this case. We note simply that we have never required a third party not employed by the government to meet traditional agency requirements, such as those described in Restatement (Second) of Agency § 1 (1958). Rather, we have said that the defense of entrapment is raised by evidence of inducement by a government agent *or one acting at his direction. Commonwealth* v. *Shuman*, 391 Mass. 345, 351 (1984). *Commonwealth* v. *Miller*, 361 Mass. 644, 651 (1972). See *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 405 (1989) (suggesting that third party's actions may be attributed to the State where promises are made for that individual's help or something was offered to or asked of that person); *Commonwealth* v. *Colon*, 33 Mass. App. Ct. 304, 305 (1992); *Commonwealth* v. *McMiller*, 29 Mass. App. Ct. 392, 393 (1990); *Commonwealth* v. *Silva*, 21 Mass. App. Ct. 536, 547 (1986). The determination of the nature of the relationship between Thomas and Grover was a factual one. See *Commonwealth* v. *Rancourt*, 399 Mass. 269, 273 (1987). Defense counsel explored this relationship when examining Trooper Thomas. This issue could have been submitted to the jury.

2. *Testimony of Grover.* The defendant's further conten-
tion is that the trial judge erred in refusing to compel the
testimony of Grover despite his assertion of his privilege
against self-incrimination. We consider this issue because it
may recur at the new trial.

When Grover was called by the defendant to testify, he
asserted his privilege against self-incrimination and refused
to testify. The defendant argues on appeal that the judge
should have compelled Grover's testimony because he could
not reasonably fear prosecution for his involvement in the
joint venture to distribute cocaine.[11] Specifically, the defend-
ant suggests that Grover was acting at the direction and with
the encouragement of police and therefore he could not fear
prosecution for his involvement.

A witness may invoke his privilege against self-incrimina-
tion and refuse to testify unless it is perfectly clear that his
testimony cannot possibly incriminate him. *Commonwealth*
v. *Funches*, 379 Mass. 283, 289 (1979). A trial judge might
compel a witness to testify as to specific matters, if there is
no risk of incrimination as to those matters. See *Common-
wealth* v. *LaBonte*, 25 Mass. App. Ct. 190, 194 (1987). The
defendant suggests that Grover could have testified as to the
conversations which took place at the initial meeting at the
Brockton Café among Grover, Thomas, and the defendant
and, prior to that meeting, between Grover and Thomas.
Since the exact nature of the relationship between Grover
and Thomas was unclear, however, Grover could possibly be
prosecuted for his involvement. Therefore, it is not perfectly
clear that Grover's testimony could not possibly incriminate
him. There was no error.

---

[11]There is no claim that Grover waived his privilege by testifying at
some prior related hearing. See *Luna* v. *Superior Court*, 407 Mass. 747,
750-751, cert. denied, 498 U.S. 939 (1990), citing *Matter of DeSaulnier
(No. 2)*, 360 Mass. 761, 765-766 (1971) (waiver extends to subsequent
proceeding if "proceeding in which privilege is invoked is a probable, logi-
cal, or natural continuation or outgrowth of the proceeding . . . in which
prior testimony has been given by the witness").

3. *Conclusion.* Based on the evidence presented at trial, the judge erred in refusing to instruct the jury on entrapment. The defendant is entitled to a new trial. Accordingly, the judgment is reversed and the verdict is set aside; the case is remanded for retrial.

*So ordered.*