COMMONWEALTH *vs.* MITCHELL LAWRENCE.

No. 06-P-983.

Berkshire. February 13, 2007. - July 26, 2007.

Present: MILLS, BROWN, & GRAHAM, JJ.

*Controlled Substances. "School Zone" Statute. Entrapment. Practice, Criminal,* Request for jury instructions.

At the trial of indictments charging the defendant with, inter alia, commission of a drug offense within a school zone, in violation of G. L. c. 94C, § 32J, the Commonwealth was not required to prove that the defendant knew or should have known the location of a preschool. [599-601] BROWN, J., concurring.

The judge at the trial of drug charges did not err in denying the defendant a jury instruction regarding entrapment, where the defendant's intended sharing of marijuana with a police detective constituted distribution within the meaning of G. L. c. 94C, § 1, and where the defendant was not induced by the detective to engage in the act of distribution. [601-603]

This court declined to review an issue whether a criminal defendant was entitled to a jury instruction regarding entrapment on a charge of commission of a drug violation within a school zone, where such issue was neither distinctly briefed nor argued on appeal. [603-604]

INDICTMENTS found and returned in the Superior Court Department on October 26, 2004.

The cases were tried before *John A. Agostini*, J.

*Richard A. Simons* for the defendant.

*Joseph A. Pieropan*, Assistant District Attorney, for the Commonwealth.

MILLS, J. A jury convicted the defendant of distribution of a class D substance in violation of G. L. c. 94C, § 32C(*a*), commission of a drug offense within a school zone in violation of G. L. c. 94C, § 32J, and possession of a controlled substance in violation of G. L. c. 94C, § 34. On appeal, he argues that (1) G. L. c. 94C, § 32J, does not impose strict liability for drug violations occurring within 1,000 feet of a *preschool*, and the

judge therefore erred in denying his motion for a required finding because the Commonwealth failed to prove that he knew the boundaries of the preschool near where he committed the offense; and (2) the judge erred in refusing to give an entrapment instruction.

*Factual background.* We discuss the facts leading to the defendant's arrest, reserving some details for our discussion that follows. Because our analysis of the defendant's right to an entrapment instruction requires us to evaluate whether "there is *any* evidence" of entrapment, regardless of its credibility (emphasis in original), *Commonwealth* v. *Tracey,* 416 Mass. 528, 536 (1993), our narrative is taken from both the uncontradicted facts and the defendant's evidence.

During the summer of 2004, the Berkshire County drug task force conducted an undercover operation at the Triplex theater parking lot in Great Barrington. The operation resulted in the arrest of nineteen individuals, including the defendant. Detective Felix Aguirre (the detective) served as the sole undercover agent for the operation. He had worked as an undercover narcotics officer since December of 1998, when he graduated from the police academy, having been specially trained there in the investigation of illegal narcotics. At the time of trial, he had effected over 800 undercover purchases of such drugs.

When the undercover operation in question commenced in June of 2004, the detective began frequenting the parking lot in order to familiarize himself with the people who passed time there. The defendant was one of those people; in the summer of 2004, he was seventeen years old and had just completed his junior year of high school. He lived in the town of Otis with his mother and stepfather, and three to four times per week would ride his bicycle approximately one hour to spend time with friends in the theater parking lot, where they would "hang out," play hacky sack, and smoke marijuana. The defendant did not speak with the detective one-on-one prior to June 30, but two to three weeks earlier they had become acquainted in a larger group of people. The defendant knew the detective as José.

On June 30, 2004, the defendant left his home between 11:00 A.M. and 12:00 P.M. and rode his bicycle to the Triplex parking lot. Although he usually brought food on his trip, he for-

got to do so and had not eaten anything that morning. After arriving at the Triplex, the defendant smoked marijuana with some friends and "was high." The detective approached the defendant and engaged him in conversation for approximately one hour. During their conversation, the detective asked the defendant "if [he] had any smoke," which the defendant interpreted to be a query as to whether he "wanted to go smoke" marijuana. The detective then said "let's take a walk." This statement did not seem strange to the defendant, as he and his friends never smoked in the parking lot, but instead walked behind the lot or toward the railroad tracks to do so.

When the two began walking together, the defendant thought that "[he] was going to head up past the Triplex [to the area where he and his friends usually smoked]. And [the detective] was walking the other way, so I turned in that direction and started following. . . . I thought we were going to go smoke, but I was kind of confused because we usually went the other way."[1] The detective walked onto Elm Street, taking a left into an area that was within the statutory school zone. The defendant followed. The detective asked the defendant "how much [he] had," to which the defendant responded "a little bit." The detective then presented a twenty dollar bill, rendering the defendant "confused" because he thought their mutual intention was to smoke. Because he was hungry, the defendant took out the small quantity of marijuana he had and gave it to the detective, who, in turn, handed him a twenty dollar bill. The defendant then purchased a burrito with the money.

The incident took place at a location that, at its shortest distance, was 426.5 feet from the First Congregational Church. The church housed the Great Barrington Cooperative Preschool, a licensed and accredited privately owned facility that serves children from two years and nine months to kindergarten age.

The defendant had not previously sold marijuana to anyone, did not do so subsequently, and had no criminal record. He was arrested on September 17, 2004.

---

[1] In view of the detective's training and experience, his responsibility for this operation, and his extensive surveillance of activities at the parking lot, it may be inferred that he knew where the defendant and others smoked marijuana, and where they did not go. Despite his denial, it may also be inferred that the detective knew where the school zone was located.

*Knowledge of the location of the preschool.* Relying on a novel interpretation of the school zone statute, G. L. c. 94C, § 32J, the defendant argues that the Commonwealth was required to prove that he knew (or should have known) the location of the preschool. The defendant contends that the strict liability component of the statute cannot be applied to preschools, a location that the Legislature added to the statute several years after its enactment.

Originally, § 32J was enacted, see St. 1989, c. 227, § 2, "to create drug-free school zones." *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 652 (1992). By its original terms, the statute punishes certain drug offenses occurring within 1,000 feet of an elementary, vocational, or secondary school. In challenges to the statute following its 1989 enactment, the Supreme Judicial Court determined that while a defendant must have an intent to commit the predicate drug offense, there is no mens rea requirement with respect to where the offense is committed. See *Commonwealth* v. *Alvarez*, 413 Mass. 224, 229 (1992); *Commonwealth* v. *Roucoulet, supra* at 650. That court concluded that "it matters not whether the drug dealer has knowledge of the location and existence of a qualifying school." *Commonwealth* v. *Bell*, 442 Mass. 118, 125 (2004).

Since the statute's enactment, the Legislature has twice "expanded the zone of safety to include other places where children would likely be present," adding in 1993, see St. 1993, c. 335, the area "within one hundred feet of a public park or playground," and in 1998, see St. 1998, c. 194, § 146, the area within 1,000 feet of an "accredited preschool" or an "accredited headstart facility." *Commonwealth* v. *Bell, supra.* Notwithstanding these additions to the statute, the Legislature never amended the last sentence, which still states that the "[l]ack of knowledge of *school* boundaries shall not be a defense" (emphasis added). G. L. c. 94C, § 32J.

Citing these changes to the statute, the defendant argues that strict criminal liability only applies when the location where the offense is alleged to have occurred includes a qualifying school as originally set forth in the statute. He contends that with respect to the later enumerated locations, including preschools, the Commonwealth must prove an intent to commit the offense within

that specific area. According to the defendant, the failure to include the locations set out in the expanded safety zones within the last sentence of the statute exempts offenses that occur in those zones from strict criminal liability.

Neither the decisional law nor the apparent legislative intent supports the defendant's interpretation. Cases discussing G. L. c. 94C, § 32J, make clear that the purpose of the statute is to keep children safe from "the potential infection of drugs" by creating safety zones where children may be present. *Commonwealth* v. *Roucoulet, supra* at 651, quoting from *State* v. *Ivory*, 124 N.J. 582, 594-595 (1991). See *Commonwealth* v. *Klusman*, 46 Mass. App. Ct. 919, 920 (1999). Viewing the statute as an exercise of the Legislature's broad authority to protect the general welfare, specifically children, the court has held that the Legislature properly forwent any element of scienter with respect to whether a defendant had an intent to commit the predicate offense within any specific area. See *Commonwealth* v. *Alvarez, supra* at 229; *Commonwealth* v. *Roucoulet, supra* at 650-651. The amendments do no more than expand that zone of safety to additional places where children are likely to be present.

The defendant's argument also fails because the imposition of strict liability pursuant to G. L. c. 94C, § 32J, does not turn on the last sentence of the statute. While the language in that sentence was certainly looked to by the court when it initially considered whether the statute imposes strict liability, it was not the sole determinant. Indeed, the court made clear that even absent specific language, criminal statutes may be construed, and have been construed, to permit conviction without proof of mens rea. *Commonwealth* v. *Alvarez*, 413 Mass. at 229. Section 32J provides no exception to that long-standing rule.

Even if we were to conclude that the last sentence of the statute determines whether strict liability is permissible with respect to the locations added after the statute's initial enactment, the result would not change. We agree with the trial judge, who in his denial of the defendant's posttrial motion to set aside his guilty verdicts stated: "[T]he generic term 'school' encompasses all forms of licensed or [ac]credited educational entities, and would certainly include preschool and day care facilities. It would make

little sense for the Legislature to add a knowledge requirement for the sale of drugs near a preschool or day care facility, but not for schools educating older children. . . . The statute is not ambiguous as the only reasonable interpretation would include preschools and day care facilities within the term 'schools.' See *Commonwealth* v. *Bell*, 442 Mass. [at] 125." The Commonwealth was not required to prove the defendant's knowledge of the boundaries of the preschool in order to convict him of violating G. L. c. 94C, § 32J.

*Entrapment as to distribution.* At trial, counsel for the defendant requested a jury instruction on entrapment based principally upon evidence that the detective initiated the solicitation of the defendant, who was under the influence of marijuana at the time he spoke with, and passed marijuana to, the detective. The request was denied. The defense of entrapment traditionally involves government inducement of criminality by an individual who was not predisposed to commit the crime. *United States* v. *Gendron*, 18 F.3d 955, 961-962 (1st Cir.), cert. denied, 513 U.S. 1051 (1994). The concept is premised upon the principle that while "[i]t is socially desirable for criminals to be apprehended and brought to justice and there is nothing whatever wrong or out of place in setting traps to catch those bent on crime[,] the state cannot tolerate . . . having its officers, who are charged with the duty of enforcing the law, instigate crime by implanting criminal ideas in innocent minds and thereby bringing about offenses that otherwise would never have been perpetrated." *Commonwealth* v. *Harvard*, 356 Mass. 452, 459 (1969), quoting from Perkins, Criminal Law 921 (1957).

An entrapment instruction is required when there is evidence of a government agent's intentional, persistent, and repeated conduct that goes beyond mere solicitation or request that the defendant participate in a criminal act. *Commonwealth* v. *Remedor*, 52 Mass. App. Ct. 694, 703 (2001). Though the threshold showing required for such an instruction is low, the defendant must point to more than mere solicitation by government officials. *Commonwealth* v. *Tracey*, 416 Mass. 528, 536 (1993). When determining whether the defendant has produced evidence sufficient to warrant an entrapment instruction, "[t]he inquiry is whether there is *any* evidence sufficient to raise the defense,

even if the evidence is unsubstantial and even if the evidence comes solely from the defendant's testimony" (emphasis in original). *Ibid.* If a defendant submits evidence of inducement, "the burden rests upon the Commonwealth to prove beyond a reasonable doubt the predisposition of the defendant to commit the crime." *Commonwealth* v. *Miller*, 361 Mass. 644, 652 (1972).

Although it is a legitimate question whether the defendant was induced by the detective to distribute marijuana,[2] we conclude that the judge did not err in denying an entrapment instruction. See *Commonwealth* v. *Remedor*, *supra* at 703-704. See also *Commonwealth* v. *Shuman*, 391 Mass. 345, 352 (1984). We recognize that the detective was a skilled and specially trained detective with substantial experience making undercover purchases of illegal narcotics, while the defendant was a seventeen year old high school· student who was hungry and under the influence of marijuana at the time he made the illegal sale to the detective. Further, the defendant asserts that he was not predisposed to sell drugs. We accept the defendant's argument in this regard, and that the delivery to the detective was the sole occasion on which he provided another with drugs with a return of money. However, for purposes of G. L. c. 94C, §§ 32C(*a*) and 32J, "[d]istribute" is

[2]The court has described the types of government conduct that could constitute entrapment as including "aggressive persuasion, coercive encouragement, lengthy negotiations, pleading or arguing with the defendant, repeated or persistent solicitation, persuasion, importuning, [or] playing on sympathy or other emotion." *Commonwealth* v. *Tracey*, *supra* at 536.

This list may not be exhaustive. In some cases lacking any indication of the types of government conduct noted in *Tracey*, an entrapment instruction was given, and the unsuccessful argument by the defendant on appeal went to whether he or she was entitled to a judicial finding of entrapment as matter of law. See *Commonwealth* v. *Harvard*, *supra* at 460 (although the defendant was not entrapped as matter of law, an entrapment instruction was given for a defendant who had a good deal of familiarity with narcotics: "[o]n the basis of this evidence it was for the jury, not the court, to say whether [the undercover agent] was leading an innocent person into a career of trafficking in narcotics on which otherwise he would not have embarked"); *Commonwealth* v. *Miller*, *supra* at 648-651 (although the defendant physician was not entrapped as matter of law, "[t]he defense of entrapment [was] appropriately raised" where the defendant, without ever conducting a physical examination or taking a medical history of the undercover agent posing as a patient, provided him with prescriptions for controlled substances, gave him such substances in unlabeled "Saran Wrap," stated "that she had opium and hashish in her home," and gave him "a quantity of cocaine").

defined as "to deliver." G. L. c. 94C, § 1, inserted by St. 1971, c. 1071, § 1. "Deliver," in turn, is defined as "to transfer, whether by actual or constructive transfer, a controlled substance from one person to another . . . ." *Ibid.* See *Commonwealth* v. *Barbosa*, 421 Mass. 547, 550 n.4 (1995), quoting from Black's Law Dictionary 475 (6th ed. 1990) ("[i]n criminal law, a person 'distributes' a dangerous drug when he sells, transfers, gives or delivers to another, or leaves, barters or exchanges with another, or offers or agrees to do the same"). See also *Blockburger* v. *United States*, 284 U.S. 299, 301-303 (1932). Based upon the defendant's testimony, he had shared marijuana with his friends earlier that day, and intended to share what he had in his pocket with the detective. Such sharing constitutes distribution within the meaning of G. L. c. 94C, § 1. Therefore, the defendant's own testimony indicates that he was predisposed to distributing marijuana. As he agreed to go on "a walk" with the detective so that both of them could smoke some of the marijuana in his possession, he was not induced by the detective to engage in the act of distribution. There was no error in denying an entrapment instruction with regard to the charge of distribution of a class D substance, G. L. c. 94C, § 32C(*a*).

*Entrapment as to the school zone charge.* Whether the judge erred in refusing to provide an entrapment instruction on the separate charge of commission of drug violation within a school zone, G. L. c. 94C, § 32J, is a distinct question analytically. The argument that the defendant was entrapped into committing the school zone offense was raised at trial[3] but was not briefed or argued as a distinct issue in this direct appeal. Because insuf-

---

[3]Throughout the trial, the defendant's lawyer attempted to show that the detective led the defendant to the school zone location where the distribution took place, and that the defendant was "confused" because he and his friends did not normally walk to this area to smoke marijuana. Moreover, when requesting the entrapment instruction, counsel supported his argument with references to both the fact that the defendant was under the influence of marijuana at the time he was approached by the detective, and the fact that the detective led the defendant to the particular location. Although the argument regarding entrapment contained in the defendant's motion for reconsideration of his motion to stay imposition of sentence refers only to the defendant being under the influence of marijuana at the time of the incident, his motion after discharge of jury refers to the judge's refusal to instruct on entrapment despite evidence that "the undercover police officer suggested the defendant walk with him, brought him to a spot within a school zone and then offered him $20.00 for the small

ficient attention has been paid to the issue in this appellate record, we decline to review it here.

Nevertheless, we take this opportunity to comment that while the traditional indicia of entrapment discussed in *Commonwealth v. Tracey, supra* at 536, and noted earlier, apply to ordinary crimes, the school zone statute, G. L. c. 94C, § 32J, is not an ordinary crime.[4] The hallmarks of entrapment articulated in *Tracey* may therefore not be exhaustive, at least when considering the defense as it applies to G. L. c. 94C, § 32J, on facts such as those pertaining here. However, as we have said, on this record we will not address the question whether the detective's act of leading the defendant into the school zone was government behavior sufficient to entitle the defendant to an entrapment instruction.[5]

*Judgments affirmed.*

Brown, J. (concurring in the result). Although it appears that there is sufficient evidence to establish beyond a reasonable doubt that the defendant possessed and distributed a controlled substance, I reluctantly concur in affirming the defendant's conviction for possession of that substance within a school zone.

The defendant's second claim of error is framed as a failure to give an entrapment instruction. While entitlement to an entrapment instruction usually requires evidence of persistent and repeated conduct on the part of the government agent, see *Commonwealth v. Miller,* 361 Mass. 644, 652 (1972), the strict liability school zone offense is not a typical crime. If a defendant intends the distribution, and whether by inadvertence or inten-

---

amount of marijuana he had."

[4]The Supreme Judicial Court has pointed out that the statute "resembles other criminal statutes which punish an underlying violation committed with mens rea and consider the offense aggravated by a fact of which the defendant may not have express knowledge." *Commonwealth v. Alvarez,* 413 Mass. at 230.

[5]We are well aware that conviction under G. L. c. 94C, § 32J, requires no proof of intent. Nonetheless, if, as the Supreme Judicial Court has indicated, the purpose of the school zone statute is to "create drug-free zones of safety where children could be, learn and play free from the potential infection of drugs," *Commonwealth v. Roucoulet,* 413 Mass. at 651, we find it unsettling that a violation of G. L. c. 94C, § 32J, occurred in this case because the defendant followed a police officer into a school zone.

tion the distribution occurs within a school zone, the case is an ordinary school zone case. Here, however, the detective was conducting an undercover narcotics operation, and was highly experienced in his trade. He knew that the defendant did not go to the school zone to smoke marijuana but, to the contrary, would go elsewhere. The detective led the defendant to the school zone, and it was predominately his acts, not those of the defendant, that made for an enhanced penalty offense.[1]

The school zone statute provides that "[l]ack of knowledge of school boundaries shall not be a defense to any person who violates the provisions of this section," G. L. c. 94C, § 32J, thus permitting the imposition of strict liability for drug offenses occurring within 1,000 feet of a school. See *Commonwealth* v. *Klusman,* 46 Mass. App. Ct. 919, 920 (1999). While the Supreme Judicial Court has held that the theory of "sentencing entrapment" should not be considered by a fact finder in determining whether a defendant was entrapped into selling a greater quantity of narcotics than he allegedly otherwise would have sold in order to increase the severity of his sentence, see *Commonwealth* v. *Garcia,* 421 Mass. 686, 692-693 (1996), our courts have never decided whether the entrapment defense could be applicable in a case, such as this, where a defendant is led into a particular strict liability offense.[2] I believe that had such an instruction been requested specifically here, the defendant would have been entitled to it.

Moreover, in his memorable speech to United States Attorneys, Justice Jackson, when he was the United States Attorney General, cautioned against the great "danger of abuse of prosecuting power." *Morrison* v. *Olson,* 487 U.S. 654, 728

---

[1] The defendant had become acquainted with the detective two or three weeks prior to the date of the event giving rise to the school zone violation at issue.

[2] Courts in other jurisdictions have found that strict liability crimes do not preclude an entrapment instruction. See, e.g., *Albaugh* v. *State,* 721 N.E.2d 1233, 1236 (Ind. 1999) (entrapment defense applicable to strict liability crime of operating a vehicle while intoxicated); *Kansas* v. *Swafford,* 20 Kan. App. 2d 563, 567-568 (1995) (though there was no "outrageous government conduct" as matter of law, this defense, which is "an offshoot of entrapment," could be applicable to a school zone charge); *Louisiana* v. *Williams,* 822 So. 2d 780, 784-785 (La. App. 2002) (though defendant failed to prove that he was entrapped into selling cocaine within a drug-free school zone, the defense could be raised to this charge).

(1988) (Scalia, J., dissenting), quoting from R. Jackson, The Federal Prosecutor, Address Delivered at the Second Annual Conference of United States Attorneys, April 1, 1940. In the instant circumstances, even if an entrapment instruction had been allowed, I believe that an enlightened prosecutor should not have sought a conviction for the school zone offense. A government official (i.e., police officer) induced the defendant to enter a danger zone that exposed him to an enhanced penalty. This conduct is particularly outrageous because the young man went along with an experienced police officer, who undoubtedly was aware of the consequences of drug activities in a school zone.

This case is made all the more troubling by the fact that because of the government's actions, a teenage defendant with no known involvement in drug sales other than this isolated incident, and for whom there is no indication of drug use other than marijuana, was subjected to a greatly enhanced penalty, including incarceration for two years, due to his conviction under G. L. c. 94C, § 32J. Possible collateral consequences of conviction faced by this young defendant may be substantial. "[S]ociety has created a vast network of collateral consequences that severely inhibit an ex-offender's ability to reconnect to the social and economic structures that would lead to full participation in society. These structural disabilities often include bars to obtaining government benefits, voting disenfranchisement, disqualification from educational grants, exclusion from certain business and professional licenses, and exclusion from public housing." Thompson, Navigating the Hidden Obstacles to Ex-Offender Reentry, 45 B.C. L. Rev. 255, 258 (2004) (footnotes omitted).

In closing, I recommend that prosecutors read the full text of Justice Jackson's remarks; I also think that trial judges have some responsibility not to be a part of what appears to be an unconscionable prosecution.