### COMMONWEALTH *vs.* DANIEL J. MADIGAN.

Suffolk. February 5, 2007. - August 13, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Practice, Criminal,* Disclosure of identity of informer, Disclosure of evidence. *Evidence,* Exculpatory, Relevancy and materiality. *Entrapment. Public Policy.*

A Superior Court judge correctly ordered the Commonwealth to disclose to a criminal defendant information concerning the relationship, if any, between a confidential informant and State or local police, as well as any promises, rewards, or inducements the Commonwealth might have provided to the informant, where such information was material to the defense of entrapment, as to which the defendant had made an adequate pretrial showing. [705-711]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 15, 2006.

The case was reported by *Spina,* J.

*Paul B. Linn,* Assistant District Attorney (*Dean Mazzone,* Assistant District Attorney, with him) for the Commonwealth.

*James J. Coviello* for the defendant.

MARSHALL, C.J. This interlocutory matter is here on the Commonwealth's petition for relief pursuant to G. L. c. 211, § 3, reported by a single justice of this court. The Commonwealth challenges an order of a judge in the Superior Court requiring it to disclose to the defendant information concerning the relationship, if any, between an individual, Jane Doe,[1] and State or local police, as well as any promises, rewards, or inducements the Commonwealth may have provided to Doe. See *Commonwealth v. Douzanis,* 384 Mass. 434, 436 n.5 (1981) (Commonwealth may seek discretionary relief from single justice of this court as

---

[1] In an affidavit filed in support of his discovery motion, the defendant named the individual referred to as Jane Doe. On appeal both parties refer to her as Jane Doe, and have redacted those parts of the record identifying her.

to disclosure order). The defendant has given notice of his intent to pursue a defense of entrapment, claiming that Doe induced him through "persistent and repetitive" requests to sell cocaine to an undercover State trooper, and that the information he seeks from the Commonwealth — whether Doe was acting as an agent of or at the direction of the government and whether the Commonwealth provided Doe with anything in exchange for her alleged assistance — is "critical" to establishing his entrapment defense. The refusal to provide the information, he argues, interferes with his Federal and State constitutional rights to present a full defense.

The Commonwealth's opposition rests largely on its asserted privilege not to disclose the identity of a confidential informant. We conclude that, in the circumstances of this case, the Commonwealth's privilege may not shield information that is material to the defense of entrapment, as to which the defendant has made an adequate pretrial showing. We conclude that the judge was correct and remand the case to the county court for entry of a judgment denying the petition for relief under G. L. c. 211, § 3.

1. *Background.* In December, 2004, a Suffolk County grand jury returned four indictments charging the defendant with trafficking in cocaine, in violation of G. L. c. 94C, § 32E (*b*), and one indictment charging conspiracy to violate the drug laws, G. L. c. 94C, § 40. According to the Commonwealth,[2] the defendant engaged in a series of illegal drug transactions with Trooper Mary Wakeham, acting undercover. Trooper Wakeham "called the defendant at home" to arrange for the initial purchase of one ounce of cocaine. She subsequently arranged to purchase cocaine from the defendant on four separate occasions between August and September, 2004, in amounts ranging from one ounce (for which she paid $1,100) to four ounces (for which she paid $4,800). According to the Commonwealth, on two of those occasions, the defendant himself conducted the exchange with Wakeham; on two other occasions, he sent a "runner," Richard Dobbyn, to complete the transactions.

The Commonwealth asserts that it also expects to present

[2]We summarize here the evidence the Commonwealth "expects to present at trial," which is drawn from police reports of the incidents in question.

evidence that the defendant regularly engaged in the sale of cocaine. For example, according to the Commonwealth, following one sale to Trooper Wakeham in August, 2004, the defendant telephoned her to say that he had made a "mistake" by confusing two bags of cocaine and that the bag he sold to her, intended for someone else, was of a lower quality than he had meant to sell to Wakeham. The Commonwealth also points to anticipated evidence to the effect that, during an arranged transaction in September, 2004, the defendant and Dobbyn met Wakeham in a garage where the defendant stated that he had to leave to meet his "supplier" in Winthrop; that, on returning, the defendant showed the trooper a large "chunk" of cocaine, which she estimated to be at least 200 grams; and that the defendant had access to additional cocaine with which to reward Trooper Wakeham for the inconvenience she endured while the defendant went to his supplier.

The defendant was arrested on the evening of October 4, 2004, after Trooper Wakeham picked him up in her automobile and completed a partial sale of two ounces of cocaine. According to the Commonwealth, on the same afternoon surveillance officers reported that they had seen the defendant engaging in conduct consistent with the sale of small quantities of drugs outside a Revere bar.

In January, 2006, the defendant filed notice of an entrapment defense, together with two discovery motions, one of which sought to discover "any and all government agents, unwitting intermediaries or not, and informants who provided assistance or information" that led to his arrest, as well as "all promises, considerations, rewards, benefits, or inducements made . . . to induce or encourage the cooperation of any witness, agent, or informant or that individual's families or friends." According to the defendant, Doe, an acquaintance of his, had been "cultivating" him as a "potential seller" to the undercover trooper for some time. The judge entered a conditional order requiring the defendant to provide an affidavit concerning his prior dealings with Doe, and obligating the Commonwealth, in response, to provide the requested discovery regarding Doe.[3]

Thereafter, the defendant filed his affidavit, in which he

---

[3]Specifically, the judge ordered the defendant to provide "an affidavit with

claims that Doe had contacted him at home on more than one occasion, wanting to "do and to purchase drugs." He claims that, in the summer of 2004, Doe brought Trooper Wakeham to his house and introduced her to him as "Mary the bar manager." Doe, he said, was "persistent and repetitive" in her requests that the defendant sell drugs to Trooper Wakeham. After reviewing the affidavit, the judge concluded that, "in the circumstances of this case, the requested information, if it exists, may be considered exculpatory," and ordered the information produced,[4] in accordance with Mass. R. Crim. P. 14 (a) (1) (A) (iii), as appearing in 442 Mass. 1518 (2004).[5]

The Commonwealth moved for reconsideration. The judge allowed the motion only to the extent that she would conduct an inspection in camera of the Commonwealth's information in question.[6] In response to the trial prosecutor's affidavit submitted for in camera review,[7] the judge ordered the Commonwealth to disclose to the defendant the contents of its submission. The Commonwealth's petition for relief under G. L. c. 211, § 3, followed.

2. *Discussion.* The government's privilege not to disclose the identity of an informant has long been recognized in this

---

basic information about when he began communication with [Jane Doe] and over what period of time, and when she introduced the defendant to the undercover trooper. In response the Commonwealth is to provide information about any promises, rewards or inducements made to [Jane Doe] within 6 months before she began speaking to the defendant and continuing to the present."

[4]The judge ordered the Commonwealth to provide information "within the possession of the prosecution or of State or local police with whom the prosecution works concerning the relationship, if any, between [Jane Doe] and [Trooper Wakeham], or between [Doe] and any other member of the State police or member of a local police department who has participated in investigating this or related cases against [the defendant]."

[5]Rule 14 (a) (1) (A) (iii) of the Massachusetts Rules of Criminal Procedure, as appearing in 442 Mass. 1518 (2004), provides in relevant part: "The prosecution shall disclose to the defense, and permit the defense to discover, inspect and copy, each of the following items and information . . . Any facts of an exculpatory nature."

[6]Where disclosure of a confidential informant is at issue, "[t]he use of an in camera procedure has been recognized in the Commonwealth, by other courts, and by commentators." *Commonwealth* v. *Douzanis*, 384 Mass. 434, 441-442 (1981).

[7]The judge impounded the affidavit, pending this appeal.

Commonwealth. See, e.g., *Worthington* v. *Scribner*, 109 Mass. 487, 488 (1872). The privilege "serves a substantial, worthwhile purpose in assisting the police in obtaining evidence of criminal activity. The privilege, which is not absolute, should be respected as far as reasonably possible consistent with fairness to a defendant." *Commonwealth* v. *Douzanis*, 384 Mass. 434, 441 (1981). See *Roviaro* v. *United States*, 353 U.S. 53, 59 (1957) (purpose of privilege is to further and protect public interest in effective law enforcement by encouraging citizens to perform obligation of communicating knowledge of commission of crimes anonymously to law enforcement officials); *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 408 (1989) (same).

Competing with this privilege is the defendant's entitlement to exculpatory or other information that is material to his defense. See *Roviaro* v. *United States*, *supra* at 60-61 (where "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege *must* give way" [emphasis added]). The cases that have required disclosure "have all done so on a standard of materiality or something roughly akin thereto." *Commonwealth* v. *Lugo*, 406 Mass. 565, 571 (1990).[8] As to materiality, we have said that the "proper inquiry" concerns "whether disclosure would have provided material evidence needed by the defendant for a fair presentation of his case to the jury." *Id.* at 571-572, 574.[9]

---

[8] Our cases have "maintained the distinction between a demand for disclosure at a pretrial hearing, where the issue is probable cause for arrest or a search, and a demand for disclosure at trial, where the issue is the defendant's ultimate guilt or innocence." *Commonwealth* v. *Lugo*, 406 Mass. 565, 571 (1990). Nondisclosure of a source of information that bears on a preliminary question, such as the suppression of evidence, "is more readily tolerated than the nondisclosure at trial of a source of evidence, where guilt or innocence is directly involved." *Commonwealth* v. *Snyder*, 413 Mass. 521, 532 (1992). Although we are concerned here with the rulings of a judge made before trial, they implicate the same concerns that will arise at trial, namely, whether the defendant has a valid defense to the charges, i.e., his guilt or innocence. It is therefore appropriate to examine the defendant's claim under the standard of "materiality," as the Commonwealth argues.

[9] In *Commonwealth* v. *Lugo*, *supra* at 574, the issue was whether disclosure of a so-called surveillance location would have provided material evidence needed by the defendant for a fair presentation of his case to the jury.

The Commonwealth argues that the defendant did not make an adequate showing that the requested information would be sufficiently material to his defense to justify invading its privilege on two grounds: that the defendant's affidavit is "utterly lacking" in specificity, and that the evidence will show that the defendant had a predisposition to commit the crimes for which he is charged. We disagree. For reasons we shall explain, the defendant has raised a potentially viable entrapment defense and has made a sufficient showing that the information he seeks from the Commonwealth regarding Doe is material to that defense.

"There are two elements of the entrapment defense: (1) that the defendant was induced by a government agent or one acting at his direction and (2) that the defendant lacked predisposition to engage in the criminal conduct of which he is accused." *Commonwealth* v. *Penta*, 32 Mass. App. Ct. 36, 47 (1992). The defendant has the initial burden "of producing some evidence of inducement by the government." *Id.* The burden then shifts to the Commonwealth "to prove beyond a reasonable doubt that (1) there was no government inducement *or* (2) the defendant was predisposed to commit the crime." *Id.* See *Commonwealth* v. *Monteagudo*, 427 Mass. 484, 487 (1998) (defendant's testimony, if believed, that trooper induced commission of crime raised issue of entrapment and Commonwealth then had burden to prove defendant's predisposition to commit crime).

Our leading case on entrapment explains that the defense "is appropriately raised . . . by the introduction of some evidence of inducement by a government agent or one acting at his direction." *Commonwealth* v. *Miller*, 361 Mass. 644, 651-652 (1972). That case concerned whether a jury instruction on entrapment was warranted. See *Commonwealth* v. *Tracey*, 416 Mass. 528 (1993). Here the issue has arisen before the trial, but the showing of inducement the defendant is obliged to make is the same. See *Commonwealth* v. *Shuman*, 391 Mass. 345, 352 (1984) (describing entrapment evidence proffered by defendant by pretrial motion to dismiss). The question, therefore, is whether the defense of entrapment here has been "appropriately raised." *Commonwealth* v. *Miller*, *supra* at 651. "The threshold for a defendant to raise the entrapment issue is low . . . ."

*Commonwealth* v. *Tracey, supra* at 536. "The inquiry is whether
there is *any* evidence sufficient to raise the defense, even if the
evidence is unsubstantial and even if the evidence comes solely
from the defendant's testimony." *Id.,* quoting *United States* v.
*Garcia,* 546 F.2d 613, 615 (5th Cir.), cert. denied, 430 U.S. 958
(1977). Cf. *Commonwealth* v. *Doyle,* 67 Mass. App. Ct. 846,
851 (2006) (threshold for showing evidence of inducement suf-
ficient to entitle defendant to entrapment instruction is "low
threshold").

We conclude that the defendant has met the threshold of
proffering "some" evidence of inducement by a government
agent, even if "unsubstantial." *Commonwealth* v. *Miller, supra.*
In *Miller,* this court explained that "[m]ere evidence of solicita-
tion is not enough to show inducement, but little more than
solicitation is required to raise the issue." *Id.* at 652. The types
of conduct that possess the indicia of inducement include "ag-
gressive persuasion, coercive encouragement, lengthy negotia-
tions, pleading or arguing with the defendant, *repeated or
persistent solicitation,* persuasion, importuning, and playing on
sympathy or other emotion" (emphasis added). *Commonwealth*
v. *Tracey, supra,* and cases cited. In his motion for discovery,
the defendant claims that Doe "had been cultivating the
defendant as a potential seller to undercover trooper for some
time," and in his supporting affidavit, he stated that she "was
persistent and repetitive in her requests to sell . . . drugs to the
undercover State Trooper even after the introduction." It would
have been preferable had the defendant's affidavit provided
more details of Doe's importuning that he sell cocaine to the
undercover trooper, such as the number of occasions, and dates,
on which he interacted with Doe concerning Trooper Wakeham,
and his response to her cajoling. But the defendant's assertions
that Doe "cultivated" him, and that she was not only "repeti-
tive" but was "persistent" in her efforts to get the defendant to
sell cocaine to Trooper Wakeham, is sufficient in light of the
"low" threshold to establish a potentially viable entrapment
defense.

We therefore turn to consider whether the defendant's
requested discovery is material to that defense. See *Com-
monwealth* v. *Lugo, supra* at 571. The defendant asserts that

Doe was acting as an agent for, or at least at the direction of, the police.[10] The assertion, if true, has a direct relationship to his entrapment defense because entrapment focuses on "evidence of inducement by a government agent *or one acting at his direction*" (emphasis in original). *Commonwealth* v. *Tracey, supra* at 537 n.10. The information, if it exists, is essential to establish his claim that the government induced him to commit the crimes. See *Commonwealth* v. *Colon*, 33 Mass. App. Ct. 304, 305 (1992) (necessary for entrapment defense to establish inducer is government agent). The Commonwealth seeks to have the benefit of the informant's privilege while refusing to disclose whether Doe was in fact acting as a government agent. It may not do so. Failure to disclose information about the relationship, if any, between Doe and law enforcement or information as to any promises or inducements made to Doe by the government would defeat the defendant's ability to establish his defense of entrapment.[11] As this court recognized some decades ago: "It is the government that claims the 'privilege,' see *Scher* v. *United States*, 305 U.S. 251, 254 (1938), which is confined to its purpose, and cannot in any event be asserted where it interferes with a fair defence." *Commonwealth* v. *Johnson*, 365 Mass. 534, 544 (1974).[12]

---

[10]The facts of this case are analogous to those in *Commonwealth* v. *Choice*, 47 Mass. App. Ct. 907 (1999), where undercover police officers asked an individual where they could buy drugs, and the individual led them to the defendant, who sold drugs to the officers and was arrested. The defendant sought to discover the name of the "informant" to substantiate a defense challenging the credibility of the officers. In concluding that disclosure of the identity was required, the Appeals Court stated: "It was sufficient in this case that the Hispanic gentleman, whom the police did not regard as a confidential informant, was placed by the prosecution in a central role in this case. As such, he was also central to the defense." *Id.* at 909. Similarly here, information about whether Doe was acting as a government agent, or whether she received inducements — inducements that may have influenced her actions — has direct bearing on the defense.

[11]The Commonwealth argues that this case is controlled by *Commonwealth* v. *Youngworth*, 55 Mass. App. Ct. 30, 33 (2002), cert. denied, 538 U.S. 1064 (2003), where the Appeals Court concluded that disclosure of the informant's identity was not required. That case does not concern an entrapment defense.

[12]Relying on *Commonwealth* v. *Ramos*, 402 Mass. 209, 215-216 n.5 (1988), the Commonwealth argues that the defendant has not shown that the discovery information is material to his defense because his supporting affidavit lacks

The Commonwealth contends that a defense of entrapment is not viable in this case because it expects to prove at trial that Doe did not bring about the defendant's propensity to sell drugs. It points to anticipated evidence that the defendant was willing to make four separate sales of cocaine to Trooper Wakeham, was able to provide over $1,000 worth of cocaine within sixteen days of the first meeting with her, admitted to having a supplier and other customers, obtained a quantity of cocaine far larger than the amount ordered by Trooper Wakeham, and was seen making what appeared to be casual sales of drugs to others. See, e.g., *Commonwealth* v. *Monteagudo, supra* at 488 (evidence of supplier of cocaine, additional customers, and access to large quantities of cocaine sufficient for jury to find beyond reasonable doubt that defendant was predisposed to commit crimes at time of alleged inducement).

Whatever the strength of the evidence at trial, it is for the jury, not an appellate court before trial, to decide whether to credit the Commonwealth's evidence. See *Commonwealth* v. *Miller, supra* at 658-659 n.3 ("We agree with the great weight of authority that, for compelling reasons, including constitutional considerations, the entrapment issue should be heard and decided by the jury"). At this stage of the proceedings, our concern is only with whether the defendant has satisfied his burden of producing "some" evidence of inducement. *Id.* at 651. See *Commonwealth* v. *O'Malley*, 14 Mass. App. Ct. 314, 325 (1982) ("In the usual case, therefore, it is far more prudent for the judge to follow the traditional, and constitutionally sounder, course of waiting until all the evidence has been introduced at trial before ruling on its sufficiency to raise a proffered defense").

The public policy rationale supporting the Commonwealth's informant's privilege is generally stated as protecting the

the necessary specificity. The *Ramos* case, however, concerned a denial of a motion for a hearing to challenge the veracity of statements made in an affidavit in support of a search warrant. This court concluded that the defendant's "mere denial" of the facts in the affidavit was not a "sufficiently rigorous" preliminary showing to require a hearing on the motion under *Franks* v. *Delaware*, 438 U.S. 154 (1978). *Commonwealth* v. *Ramos, supra*, quoting *People* v. *Lucente*, 116 Ill. 2d 133, 152 (1987). The defendant here was required to satisfy the materiality standard described above.

identity of an informant.[13] See, e.g., *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 408 (1989), quoting *Commonwealth* v. *Douzanis*, 384 Mass. 434, 441 (1981) (government's privilege serves purpose of assisting police in obtaining evidence of criminal activity). We reject the defendant's argument that, where the identity of a person suspected of being an informant or agent is known to the defendant, the privilege does not apply. While protecting the identity of informants plainly advances the important public policy interest of encouraging people to inform the police about criminal activity without fear of reprisal for doing so, see *Roviaro* v. *United States*, 353 U.S. 53, 59 (1957), citing *Scher* v. *United States*, 305 U.S. 251, 254 (1938), the inverse is equally true. Revealing to a defendant that a particular individual known to him is in fact acting as an informant for the police will tend to discourage people from cooperating with the police. Certainly such information may place at risk the safety of the individual, once she is revealed as an informant. Cf. *Commonwealth* v. *Johnson*, *supra* (protection of informer is factor to consider in disclosing identity). The Commonwealth is, of course, free to use as informants persons known to any defendant, as it has always done. It may not, however, withhold information concerning any informant where, as here, the information is material to the defense and potentially exculpatory. *Roviaro* v. *United States*, *supra* at 60.

3. *Conclusion.* The case is remanded to the county court for entry of judgment denying the Commonwealth's petition for relief under G. L. c. 211, § 3.

*So ordered.*

---

[13]The cases relied on by the Commonwealth to support its claim of privilege concern protection of an informant's identity. See *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 408 (1989); *Commonwealth* v. *Youngworth*, 55 Mass. App. Ct. 30, 32 (2002). Cf. *Commonwealth* v. *McMiller*, 29 Mass. App. Ct. 392, 406 (1990), quoting *Commonwealth* v. *Curcio*, 26 Mass. App. Ct. 738, 747 (1989) ("With the informer's identity known, the Commonwealth could not claim the 'informer's privilege' of barring [her] testimony . . .").